JOHN A. PRICKETT ET AL., Respondents, *v.* NEW ORLEANS ANCHOR LINE, Appellant.

### March 27, 1883.

1. PRINCIPAL AND AGENT — IMPLIED POWERS. — The captain of a steamboat has the implied power, as master of the vessel, to invite or permit passengers to remain on board until morning, when the boat arrives in port during the night.

2. —— CARRIERS. — The voyage is not ended until passengers who remain on board under such invitation or permission have had a reasonable time on the next morning to leave the boat and to remove their baggage.

3. —— DAMAGES. — Under such circumstances, the carrier is liable to passengers so remaining on board, for loss of baggage occasioned by the accidental burning of the vessel during the night.

4. —— EVIDENCE. — In such a case it is not error to refuse testimony tending to show want of express authority in the captain to extend such invitation or to grant such permission to passengers.

5. EVIDENCE — PRACTICE. — A judgment will not be reversed, on appeal, for the admission of incompetent evidence, which is merely cumulative, of facts abundantly proved by competent evidence.

APPEAL from the St. Louis Circuit Court, LINDLEY, J.
*Affirmed.*

GIVEN CAMPBELL, for the appellant: Under the pleadings and proofs the court should have accorded to the defendant the instruction for non-suit. For when the facts are undisputed, as in this case, as to time, the question as to whether plaintiff had a reasonable time to go ashore with her baggage, is a question of law for the court, and should not be put to the jury. — See *Roth* v. *Railroad Co.*, 34 N. Y. 548; *Hedges* v. *Railroad Co.*, 49 N. Y. 225; *Bennett* v. *Lycoming Fire Ins. Co.*, 67 N. Y. 277. It is a general rule applicable to agency of every description, that the agent cannot bind his principal except in matters coming within the scope of his authority. — See *General Interest Ins. Co.* v. *Ruggles*, 12 Wheat. 412, 413; *Pope* v. *Nickerson*, 3 Story C. Ct. 465. The owner is not liable for loss

of goods by negligence of master, taken on board by master when the vessel is not usually employed to carry goods. — *Baucher* v. *Lawson*, cas. *temp.* Hardwick, 85 ; Abbott, 119. Under the circumstances stated in the instructions, a naked license or permission, from the master to plaintiff, to remain on the boat with her baggage for her own mere pleasure and convenience, and not for the benefit of the defendant, did not create a duty or impose any obligation upon defendant towards the licensee. — *Homsell* v. *Smith*, 79 Eng. Com. L. 732 ; *Balch* v. *Smith*, Hurl. & N. 736 ; *Nicholson* v. *Railroad Co.*, 41 N. Y. 525. It is the duty of the passenger to remove his baggage within a reasonable time after reaching his destination. — Thomp. on Car. 534, sect. 23 ; *Railroad Co.* v. *Fairclough*, 52 Ill. 106 ; *Bell* v. *Railroad Co.*, 6 Mo. App. 363.

JOHN D. POPE, for the respondent : A carrier is bound to transport the reasonable baggage of passengers without extra charge, and is liable for such baggage as an insurer. — Schouler on Bail. 342–348 ; *Railroad Co.* v. *Fraloff*, 100 U. S. 29. This liability continues after the end of the journey has been reached, at least for a reasonable time for passengers to call for and remove their baggage ; and the burden is on the carrier, in case of loss, to show that such reasonable time had elapsed before the loss occurred. — *Burnell* v. *Railroad Co.*, 45 N. Y. 184; *McAndrew* v. *Whitlock*, 52 N. Y. 40. What is a reasonable time is a mixed question of law and fact, to be submitted to the jury under appropriate instructions. — *Railroad Co.* v. *Mahan*, 8 Bush, 184 ; *Zinn* v. *Steamboat Co.*, 49 N. Y. 452. And it is held, also, that in order to terminate its liability as insurer for unclaimed baggage, the carrier, after a reasonable time for a passenger to receive and remove it has expired, must store the baggage, after which the liability is only that of warehouseman. — *Bartholomew* v. *Railroad Co.*, 53 Ill. 227 ; *Redmond* v. *Steamship Co.*, 46 N. Y. 583. The agent of a carrier, whose duty it is to receive freight for

shipment, is a general agent, as respects the making of contracts for its carriage; so are agents for the receipt and delivery of baggage general agents, as respects the receipt and care of baggage; and their acts, as such agents, bind their principals, even though they exceed their instructions. — *Pruitt* v. *Railroad Co.*, 62 Mo. 527; *Schroeder* v. *Railroad Co.*, 5 Duer, 52–63; *Goddard* v. *Mallory*, 52 Barb. 87; *Rawles* v. *Deshler*, 3 Keyes, 572; 2 Redf. on Rys., pt. 6, sect. 171. The captain of a vessel has the power to bind the owners by any contracts with passengers. — 1 Pars. on Mercantile Law, 378, 380; Abb. on Ship., pt. 2, chaps. 1, 2, 3; *Powell* v. *Myers*, 26 Wend. 591; *Roth* v. *Buffalo, etc., R. Co.*, 34 N. Y. 552–554; *Burnell* v. *Railroad Co.*, 45 N. Y. 186, 187.

BAKEWELL, J., delivered the opinion of the court.

This is an action against a corporation engaged in the business of carrying passengers and freight for hire on the Mississippi, for the loss of the baggage of a passenger.

There was a verdict and judgment for plaintiffs.

There is little, if any, conflict in the evidence. It appears that plaintiff Elizabeth Prickett, who resides at Edwardsville, Illinois, left St. Louis on February 23, 1881, on the James Howard, one of defendant's line of New Orleans packets, on a round trip from St. Louis to New Orleans and return. Before arriving at Cairo on the return, it was anticipated that the boat would reach St. Louis during the morning of Sunday, March 13th. But owing to the bad quality of coal furnished at that point, she did not make the distance from Cairo as quickly as her officers had hoped; and she reached the wharfboat at St. Louis at about a quarter past nine at night. It was then dark; there were no hacks or conveyances on the levee. The deck passengers and the St. Louis cabin passengers all left the boat on her arrival. But those cabin passengers who did not live in St. Louis, including Mrs. Prickett, remained on board. Most of the passengers

were ladies and children.   Mrs. Prickett was accompanied
by a grown-up son.    The boat took fire, as is supposed, by
the spontaneous combustion of some bales of jute.  The
fire took place at a quarter past ten.    The passengers were
saved in the yawl.    But Mrs. Prickett lost her trunk and
its contents, consisting of wearing apparel, which were
burned with the boat.

The captain of the boat gave permission, as soon as it was
seen that the boat would arrive after night, for the lady
cabin passengers and their escorts to remain on the boat all
night.    He especially gave permission for Mrs. Prickett to
do so.    The captain says that it was some inconvenience to
allow passengers to remain on board over night, but that
permission to do so was always accorded on his boat to ladies
when the boat arrived at night, though it was sometimes
refused to men who had no women in charge; and on this
trip he refused permission to stay over night to a company
of civil engineers who were travelling together.    There was
evidence that there was a hack-stand within a quarter of a
mile of the levee, at which Mrs. Prickett's escort could
easily have got a hack and taken his mother to a hotel before
the fire.    Mrs. Prickett intended to leave on the morning
train for home, and desired to remain on board to save the
trouble of moving into a hotel and out again before taking
the morning train.

The court gave the following instruction at the instance
of plaintiffs : —

" 1. The court instructs the jury, that if they believe
from the evidence that the steamer James Howard reached
her landing at St. Louis on the night of March 13, 1881,
at a later hour of the night than had been anticipated by
the officers and passengers, and in view thereof the captain
of the steamer James Howard, prior to the landing of the
same, invited plaintiff Elizabeth Prickett, or gave her per-
mission to remain on board over night; and that in conse-
quence of such invitation or permission, plaintiff took no

immediate steps to receive and remove her baggage when the steamer landed, and the same remained on board and was burned before removing, then defendant is liable for its loss, and the jurors will so find.''

At the instance of defendants, the court gave the following instructions : —

'' 2. The jury are instructed, that in determining what was a reasonable time within which plaintiff could have gone ashore with her baggage after the landing of said boat at St. Louis, they must not take into consideration the facilities or accommodations at the wharf at St. Louis, on the landing of said boat, for the transporting of plaintiff and her baggage to a hotel or other place of abode.

'' 3. If you find that the plaintiff kept her baggage on said boat after its safe arrival, and after a reasonable time had elapsed within which she could have removed it from said boat, and that afterwards it was burned on board said boat, then unless you find that said fire was due to the negligence of the defendant or its servants, you will find for the defendant, and the court instructs that the burden of proving such negligence is on the plaintiff.

'' 4. The court instructs the jury that the instructions are to be taken and considered together as a whole.''

The court refused an instruction that, on the pleadings and evidence, plaintiff is not entitled to recover.   This instruction is inserted amongst those given in the transcript ; but this is manifestly one of those clerical errors, which unfortunately, in many cases disfigure the transcripts which it is my duty to examine.   I am sometimes tempted to doubt whether these transcripts are compared before they receive the certificate of the clerk.   The work is so carelessly done, in many instances coming under my observation, that I think it my duty, in the interests of the administration of justice, to animadvert upon it again, as I have taken occasion to do before, though, I think, with little or no good effect.

Defendant asks the court to instruct, that the master of

the boat had no authority to invite passengers to remain on the boat after her arrival in port, unless this was expressly given to him by her owners; that if plaintiff, with her baggage, had a reasonable time within which, by diligence, she might have gone ashore, and by a permissive license from the master, for her own benefit, and without benefit to defendant, she remained on board till her baggage was lost by fire, without any negligence of defendant, she cannot recover. The court refused so to instruct.

We think these instructions were properly refused, and that the cause was put to the jury, by the instructions given, in a way of which defendant has no reason to complain.

That the captain of the Howard had full authority to permit passengers to remain on board over night when she arrived in port after night had set in, we have no doubt at all. So far as the license went, it was as good as if it had been given in express terms to plaintiff by the owners and captain together. It was within the incidental powers necessarily resulting from his official capacity as master of the vessel. These are restricted to the usual business of the trip; but within the scope of that business, they are very wide indeed, and exceed those of an ordinary agent. The captain could not turn his vessel, if employed for carrying passengers alone, into a mere freight vessel; nor could he turn it into a mere boarding-house, by tying up at the bank and taking boarders; but a ship may arrive in port at an hour when it is fairly doubtful whether it would not be a hardship to require all the passengers at once to disembark; and the captain, in the interest of the owners of a passenger ship, must necessarily have the power to permit the women on board, when he arrives in port at night, to remain on board until a reasonable hour next day. And if he accords this permission, the passengers remain as passengers, and the voyage is not ended as to them until they have had a reasonable time to leave the vessel next morning. To lay down a rule that the captain of a passenger boat navigating

an inland stream, must turn out all his passengers as soon as the vessel reaches port, no matter whether it be daylight or dark, and that, if he permits them to remain till morning, the owners of the boat have no longer the responsibility attaching to them as common carriers, for the safety of the passengers and their baggage, would be to do severe damage to the business of carrying passengers by water. The master has the whole care and supreme command of his vessel, and must see to her unloading, whether of goods or passengers.

Certainly, it cannot be said that, when an inland steamer arrives at the levee of a large city after night, where no carriages are waiting for the passengers, that if the captain himself invites the women on board and their escorts, to remain on board till morning, it is unreasonable in the passengers to accept this invitation; that next morning is not then a reasonable time within which to leave the ship; or that what is reasonable time for the passengers is not equally so for their baggage. But the strict accountability of the carrier does not terminate until a reasonable time after the arrival of the baggage at its place of destination. *Roth* v. *B. & S. L. R. Co.*, 34 N. Y. 548. *Prima facie*, the liability of the carrier continues until the safe delivery of the baggage to its owner. In *Powell* v. *Myers* (26 Wend. 291), it was held, that where a passenger from West Point to New York left the boat on its arrival at New York at its usual hour, ten o'clock at night, leaving his trunk on board, with the assent of the captain, on his assurance that it would be safe, and it was delivered before he called for it next morning, to a negro, on a forged order, the carrier was liable. But in *Roth* v. *Railroad Company* (*supra*), where the passenger left his trunk with the company over night, without any arrangement with them, and the depot was burned before morning, it was held that the company was not liable. But the arrival there was by rail, at ten o'clock at night, at a passenger depot; the passengers were all warned to take

away their baggage at once, on arrival, and there was testimony that there were upwards of twenty carriages waiting for passengers and baggage at one of the streets on which the depot stood.   The court held, as a matter of law, that the conduct of the passenger, under these circumstances was unreasonable, in not taking his baggage with him.   And, in a subsequent case (*Burrell* v. *New York, etc., R. Co.*, 45 N. Y. 184), the court of appeals says, that, in *Roth* v. *Railroad Company* (*supra*), "the rule of exemption from strict liability was carried to the utmost limit of propriety, to say the least of it."

It is useless to multiply citations.   It cannot be declared, as a matter of law, upon the undisputed facts of the case at bar, that a reasonable time for the delivery of the baggage had elapsed when plaintiff's trunk was burned in defendant's care.

Appellant objects that some incompetent testimony was admitted on the part of plaintiff.   This testimony was cumulative as to the permission to stay on board, which was abundantly shown by the testimony of the captain of the boat, a witness for defendant, and by the testimony of many witnesses for plaintiff.   No error in the admission of testimony was committed by which defendant could be prejudiced.

The objection that the court refused to allow defendant to show that the captain had not express authority from the owners to permit passengers to remain on board over night, is met by what has been already said.   We may add, that it appears from the testimony of the captain himself, that such had been his custom ever since he commanded the boat, and on other boats, and he was an old and experienced captain.   It was immaterial that he had no express authority, and quite unnecessary to show that he had none.

It is contended that the instruction for plaintiff is open to the construction that, whenever a boat arrives later than those on board expect, no matter at what hour of the day

or night, the master may grant leave to the passengers to stay on board after she reaches port, and thus extend the liability of the owners. But we do not think that the instruction is open to such construction, or that it would be so understood, in view of the evidence. It may be questioned whether instruction No. 2 for defendant should have been given. But, if this was error, it was error of which defendant cannot complain. The judgment, with the concurrence of all the judges, is affirmed.