ALBERT H. OWENS, Respondent, v. THE KEL-
    LUM COFFEE AND MANUFACTURING COM-
    PANY, Appellant.

Kansas City Court of Appeals, March 4, 1912.

CONVERSION: Chattel Mortgages: Tender: Pleading.  Plaintiff
    sued for damages for the conversion of certain personal property
    comprising a restaurant.  He conducted the restaurant for some
    time and while doing so placed a chattel mortgage thereon to
    secure a note given for borrowed money.  Later he leased the
    restaurant.  The mortgagee sold the note and the purchaser
    foreclosed and sold the restaurant. Plaintiff tendered the amount
    due on the mortgage note to the purchaser thereof as agent of
    defendant.  Payment was refused upon the ground that the
    property had been sold under foreclosure.  The petition alleged
    tender but failed to allege that the tender was kept good.  Objec-
    tion to the introduction of any evidence under the petition on
    this ground, was made at the beginning of the trial and was
    overruled.  Held that the objection to the admission of any
    evidence should have been sustained.

Appeal from Jackson Circuit Court.—*Hon. Walter
    A. Powell,* Judge.

REVERSED.

*M. J. Kilroy* and *Gilmore & Brown* for appellant.

(1) The court erred in overruling defendant's
objection to the admission of any testimony, because
the petition fails to state any cause of action against
this defendant, in this: It does not allege that a ten-
der was kept good between the time of the alleged
tender and the time of the sale.  Robbins v. Railroad,
132 Mo. App. 306; Bank v. Tiger Tail Mill, 152 Mo.
145; Darrow v. Wendelstadt, 43 App. Div. (N. Y.) 426.
It does not keep the tender good after sale, by bring-
ing the money into the court or offering to do so.  It
does not allege that the mortgage was not in default
at the time of the sale.  Parker v. Rhodes, 79 Mo. 89;
Jackson v. Cunningham, 28 Mo. App. 354.

*J. K. Stickney* and *W. H. Leavitt* for respondent.

(1) If a mortgage is given to secure a note payable on demand, and no provision is made for any credit, the condition as to default in the payment of the note is broken as soon as made, and no demand is necessary. Pollock v. Douglas, 56 Mo. App. 487; Southwick v. Hapgood, 10 Cush. 119. (2) After the tender by a mortgagor, in possession, of the balance due on a note secured by a chattel mortgage, the mortgagee had no right to take possession of the mortgaged property. Hase v. Schotte, 109 Mo. App. 458; Knox v. Williams, 24 Neb. 630; Maxwell v. Moore, 95 Ala. 166; Musgat v. Pumpelly, 46 Wis. 660; Hutchins v. Munger, 41 Barb. (N. Y.) 396; Jones on Chattel Mortgages (5 Ed.), sec. 635.

BROADDUS, P. J.—This is a suit for the conversion of certain personal property. The respondent has adopted the statement of appellant, with a certain exception to be noted, and as a matter of convenience we will also adopt it, taking into consideration the part excepted to. It is as follows: "For some years prior to December, 1909, respondent had owned the furniture and equipment in a restaurant located at 1410 Grand Avenue in Kansas City, Missouri. This restaurant he had, for some time, managed himself, but for several months prior to December, 1909, had leased to one Wistcox, who operated the same for himself and in his own name. On June 5, 1908, while respondent was operating the restaurant, he had borrowed from the Dickey Dairy Company of Kansas City $332.65, which debt was evidenced by a note of respondent to the dairy company payable upon demand, and secured by a chattel mortgage on the equipment of the restaurant. During the time that respondent had operated the restaurant, he had also become indebted to the appellant in the sum

of $147.33, which in December, 1909, was long past due and amounted, with interest, something over $160. The Dickey Dairy Company had long prior to December, 1909, demanded payment of its note and respondent had paid on the note the sum of $230, leaving a balance still due on December 27, 1909, including interest, of $118.13. In November, 1909, the evidence tends to show that appellant sold this account to M. J. Kilroy, who was then secretary of the appellant, and some time thereafter Kilroy caused an action to be brought in a justice court against respondent and a garnishment to be served upon Wistcox. Shortly after the institution of this action, respondent requested the Dickey Dairy Company to go and foreclose its mortgage. Pursuant to this request, Mr. Dickey, manager of the dairy company, together with F. M. Hayward, his attorney, went to the restaurant on the morning of December 27, 1909, for the purpose of foreclosing the mortgage. Mr. Wistcox requested a postponement of the foreclosure until later in the day, notifying Mr. Kilroy by telephone of the proposed foreclosure and also notifying Mr. Kelley, manager of the appellant which had a coffee urn in the restaurant leased to Wistcox, that he had better come down and look after his urn. Upon receiving this communication Mr. Kilroy went immediately to the restaurant where he found Wistcox, Dickey and Hayward, and shortly afterward Mr. Kelley came in. Mr. Kilroy objected to the foreclosure and offered to buy the dairy company note and mortgage. The respondent was then called over the telephone by Mr. Dickey and came to the restaurant. Mr. Dickey then offered to allow respondent to pay the note, which he declined to do, and thereupon the dairy company sold the note and mortgage to Kilroy, who gave his check to Hayward, as attorney for the dairy company, for the sum of $118.13, the amount with interest then due on the mortgage. Kilroy then told the respondent if he desired to ad-

just the matter to come to his office and do so and went away. On that evening, the evening of December 27th, the respondent, with one Watkins, went to the restaurant and demanded the possession of the same from Wistcox. Wistcox declined to yield the possession and called Kilroy over the telephone and Kilroy instructed Wistcox to take possession of the restaurant for him under the Dickey mortgage. On the next morning Kilroy sold the mortgaged chattels to Wistcox for $287 but no money was paid at the time, it being understood that Wistcox would get the money by the negotiation of a loan and pay Kilroy.

"Some time during the day of December 28th, the respondent, with one Watkins, appeared at Kilroy's office and offered either to buy the note or pay it off, and Watkins produced a roll of bills said to contain $140. There is a disagreement among the witnesses as to the time of day this occurred. Owens testifies that it was in the forenoon, Kilroy testifies it was in the afternoon, and Watkins' testimony does not fix the time of day. When this offer was made, according to the testimony of Watkins and Owens, Kilroy said that he did not want the money, while according to Kilroy's testimony, he said that he had already sold the restaurant and could not take the money. All the testimony bearing on the subject shows that the offer to pay the note, or to buy it, whichever it was, occurred after the sale, though the jury has found the contrary. After the offer of Watkins to buy the note, or pay it, occurred, Watkins put the money in his pocket and went away. He testifies that on the following day he again returned and offered to pay the entire amount represented by the note and account, but according to his statement was then informed by Kilroy that the restaurant had been sold.

"Afterward the respondent brought this action upon the theory that Kilroy, in the purchase of the Dickey mortgage, was acting as the agent for the ap-

pellant; that the tender or offer to buy the Dickey note by Watkins satisfied the mortgage, and that the sale made by Kilroy to Wistcox was made in behalf of the appellant and constituted a conversion of the mortgaged property.''

Respondent excepts to the following part of the statement as true, viz.: ''All the testimony bearing on the subject shows that the offer to pay the note, or to buy it, whichever it was, occurred after the sale.'' There was evidence tending to show that the offer to pay the note was made before the sale of the mortgaged property.

The petition recites the execution of the note and mortgage to the Dickey Dairy Company; its transfer to appellant on the 27th day of December, 1909; a tender of the amount due on the note on December 28th, 1909, to Kilroy, appellant's agent, and the refusal of the appellant's agent to accept the tender so made; and that appellant seized and converted the property to its own use on December 31st 1909.

The defendant objected to the admission of any testimony under the petition because it failed to state that the alleged tender made at the time of the sale of the goods was kept good; and because it does not allege that the tender was made good by bringing the money into court or offering to do so. At the close of plaintiff's testimony, and also at the close of all the testimony, defendant interposed a demurrer to plaintiff's case. The ruling of the court on the objections made to the introduction of any evidence under the pleadings were overruled and the demurrers to plaintiff's case each were refused by the court.

The plaintiff recovered judgment for $843.33 for actual and $1500 for punitive damages.

The case depends on a question of pleading. The defendant's objections to the admission of any evidence under the petition should have been sustained, for the reason that it failed to state a cause of action.

It failed to state that plaintiff kept his tender good.
The objection was well founded and should have been
sustained.   In a case where the tender was made by
defendants long after the maturity of the notes the
question raised was whether the tender, if sufficient in
amount, discharged the lien of the deed of trust. Judge
MACFARLANE, who delivered the opinion of the court,
said that: ''The question is one upon which there is
much conflict in the adjudications of the courts of the
country.''   After reviewing many cases the judge
came to the following conclusion: ''Our opinion is
that a tender of the amount due on a mortgage debt,
made after default, should not on principle discharge
the mortgage, and should have no greater effect on
the security than it has on the debt itself, and that
the result will be the same whether the mort-
gagee holds the legal title in trust, or as a mere
security.   Defendants make no offer to redeem,
but stand upon the strict legal rights they suppose
their tender gives them.  They state no legal defense
to the action under this plea and the court ruled cor-
rectly on it.''  The opinion was delivered by the court
in Banc, and was concurred in by all the judges. [Hud-
son v. Glencoe Gravel Co., 140 Mo. 103.]  ''A tender
before sale by the mortgagor, in lawful money, of an
amount sufficient to pay the mortgage debt, principal
and interest, and the costs then accrued in the fore-
closure proceedings, does not extinguish the lien, nor
authorize an equity court to decree the mortgage re-
leased.  Its only effect is to stop the running of in-
terest from the day of the tender.  The only way to
extinguish the lien is to keep up the tender, that is,
to pay the debt.''  [Knollenberg v. Nixon, 171 Mo.
445.]  This opinion was also rendered in Banc and
concurred in by all the judges. We do not think it is
necessary to cite other cases on the question of the
right of plaintiff to recover under his petition.

The plaintiff seems to rely upon the case of Hase v. Schotte, 109 Mo. App. 1. c. 461, as authority for his position that in such cases the mortgagor, after having made tender once, need not keep such tender good. The evidence in that case showed that the mortgagor tendered the amount due on the note secured by the mortgage twice, but on each occasion the mortgagee refused it. The court held that after these tenders the mortgagee had no legal right to take possession of the mortgaged property.

The appellant has filed with us a copy of the abstract in the case which shows that the last tender was made to the constable who served the writ in the case. The proceedings were instituted in a justice's court and in such cases a tender to the constable is sufficient. With this short explanation the seeming conflict with the decisions of the Supreme Court is explained away. As there was no offer to show, or any pretense whatever, that the plaintiff had kept his tender good, the court should at least have sustained defendant's demurrer to plaintiff's case after the close of his testimony. The plaintiff having shown no right whatever to recover the cause is reversed. All concur.