## BELLE H. ANDREWS, Respondent, v. BANK OF BUCHANAN COUNTY, Appellant.

Kansas City Court of Appeals. November 7, 1921.

1. **CONVERSION: Pledges: Possession: Tender: To Maintain Action for Conversion of Note Delivered as Collateral Security for a Loan, Tender of Amount Due on Loan Must be Made and it Being Refused, the Tender Must be Kept Alive.** In an action for conversion of a promissory note where plaintiff as a part of an agreement with B. purchased the note, and B. borrowed of defendant bank an amount equal to that part of the purchase price which plaintiff did not pay in cash and endorsed and delivered the note to the bank as collateral security for the loan, plaintiff was not entitled to the possession of the note until she had tendered the amount due the bank on the note and after refusal of tender, plaintiff not having kept the tender good by paying the money into court at the trial, or offering to do so, was not entitled to recover.

2. **TENDER: To Keep Tender Good Money Must be Paid into Court or Offer to do so Made.** To keep tender alive the money must be paid into court at the trial, or offer to do so made.

3. **TRIAL PRACTICE: Demurrer: Instructions: On Demurrer to the Evidence Defendant Entitled to Review of Ruling Thereon in Appellate Court Notwithstanding any Theory that Might be Disclosed by Other Instructions Asked Subsequent to the Overruling Thereof.** Where demurrer to the evidence challenged plaintiff's right to

(366)

recover, the defendant in the appellate court is entitled to insist upon it notwithstanding any theory that might be disclosed by the other instructions asked subsequently to the overruling of the demurrer.

Appeal from the Circuit Court of Buchanan County.— *Hon. Thos. D. Allen,* Judge.

REVERSED.

*Culver, Phillip & Voorhees* for respondent.

*Thomson & Griswold* and *Eugene Silverman* for appellant.

BLAND, J.—This is an action for conversion of a promissory note. There was a judgment for plaintiff and defendant has appealed.

Defendant was engaged in the general banking business at St. Joseph, Missouri. Henry G. Buckingham, who was dead at the time of the trial, conducted a loan agency in said city. On October 3, 1918, plaintiff purchased of Buckingham a promissory note for $3000, which had been executed to Buckingham by James F. Cutsinger and Josie C. Cutsinger, his wife. This note was secured by a deed of trust on land belonging to Cutsinger in Sullivan county, Missouri. In payment of the note plaintiff gave Buckingham her check for $2200 and her note for $800, thereupon Buckingham on the same day took the Cutsinger note for $3000 to defendant bank and borrowed $800 from the bank and gave his note therefor with the Cutsinger note and deed of trust as collateral. There is dispute in the briefs as to whether the $800 was borrowed with the knowledge and consent of plaintiff but we think there is none in the evidence but that the $800 was borrowed in pursuance of an agreement that plaintiff had with Buckingham. However, this matter will be discussed more fully later.

Buckingham gave a check for $3000 on defendant bank which was cleared on October 4th, presumably this

was given by Buckingham to Cutsinger in making the loan and was made up of the $2200 paid by plaintiff to Buckingham by check and the $800 he borrowed from the bank on October 3d. On the latter date Buckingham owed the bank $2800 aside from the $800 borrowed at that time. This $2800 was made up by a note for $2500 and one for $300. The $2500 was secured by other collateral and the $300 was an overdraft. On November 1, 1918, plaintiff gave her check to Buckingham for $200 to apply on her note of $800 and on the same day Buckingham endorsed and delivered this check to defendant. On December 4, 1918, plaintiff made another payment by check to Buckingham in the sum of $250 and Buckingham also endorsed this to the bank by the following endorsement—

"Pay to the Order of The Bank of Buchanan County for credit on the $800 note on account of the Cutsinger loan, Mr. H. G. Buckingham."

On February 9, 1919, plaintiff gave her check to Buckingham for $200 to apply on her note to him and it was endorsed in language similar to the endorsement above. Plaintiff testified that with the exception of one of these notes they were endorsed in her presence.

It will be seen that on October 4, 1918, Buckingham owed the bank $3600. On December 4, 1918, Buckingham owed the bank in all about 3000 and gave the bank a note for that amount. This indebtedness also covered interest, expenses, etc., all of which were paid by the new note, leaving a balance of $29.48 due Buckingham which was credited to his account. This new note was made in order to have all of Buckingham's indebtedness to the bank evidenced by one note. At the time of its execution Buckingham and the bank agreed that the collateral theretofore held by the bank together with the Cutsinger note should be held as collateral for the new loan. Sometime after this plaintiff heard that her note was being used for an unauthorized purpose. She telephoned the president of the bank and arranged to meet him and Buckingham at the bank. The meeting took place early in May, 1919. At this meeting Fulkerson, president of the bank, claimed that the bank held the note as

collateral to the note of $3000. According to plaintiff's testimony Buckingham stated to the president of the bank at that time that the Cutsinger note was held as collateral for the $800 note "of Mrs. Andrews" (meaning plaintiff), and Buckingham stated to the president of the bank that he had informed the latter to this effect when the Cutsinger note was left at the bank on October 3, 1918, that he told Fulkerson it belonged to plaintiff and that it was left as collateral for the $800 note only. The president testified that he never knew that plaintiff claimed to be the owner of the note until two weeks prior to the meeting at the bank, when Buckingham informed him that "it belonged to an old woman."

There was an instruction asked by defendant at the close of all the evidence in the nature of a demurrer to the evidence. After this was overruled the case was submitted to the jury under instructions that told the jury that plaintiff was entitled to recover if the bank at the time it took the Cutsinger note as collateral on December 14th had knowledge that it was the property of plaintiff.

There are several points made by the appellant but as there is one that requires a reversal of the case it is not necessary to discuss the others. There is some contention as to whether plaintiff became the owner of the note until she paid Buckingham the balance of the $800 note owing on it. However, for the purposes of the case, we will assume she became the owner of the note at the time she paid the $2200 in cash to Buckingham and gave him her note for $800 to cover the balance. However, the evidence is undisputed that it was a part of the transaction that she had with Buckingham that he was to borrow $800 from the bank, the inference being that it was borrowed for the purpose of making up the $3000 to be. paid Cutsinger in exchange for the latter's $3000 note and deed of trust. In detailing the conversation had at the bank when she and Buckingham and the president of the bank were present, she testified that Buckingham said to Fulkerson, the president of the bank—

208 M. A.—24

" 'You know that I put up this Cutsinger note as the collateral for the eight hundred dollar note of Mrs. Andrews, that she had given me,' and the debt that I made—that he got the loan from the bank, the eight hundred dollar note; that was agreed upon."

The part quoted not contained in the quotation within the quotation was the language of plaintiff. She says that it was agreed that Buckingham was to get the $800 from the bank and she repeats in her testimony at several places that at this meeting Buckingham said to Fulkerson—

"You know that I put up this Cutsinger note to secure the eight hundred dollars that I got from the bank for Mrs. Andrews."

Of course this testimony was for the purpose of showing that the bank knew of the ownership of the Cutsinger note.

As we have already stated, plaintiff testified that she saw Buckingham at the time she made the payments on her indebtdness to him on the $800 note endorse two of the notes to the defendant and place on the back thereof the words, or ones of similar import, "for credit on the eight hundred dollar note on account of the Cutsinger loan." These checks, no doubt, came back to her when paid. She therefore knew that the bank was holding the Cutsinger note for the loan of $800 to Buckingham but she made no protest at the time and took no action in regard to the matter, and it was not until she learned that the bank was claiming the Cutsinger note for the entire indebtedness of Buckingham that she made any protest. So we think that although there is a denial in plaintiff's brief that she consented to the use of her note (the Cutsinger note and deed of trust) by Buckingham as collateral for the loan of $800 at the bank, there is no question but that the evidence shows that she did know of it and that it was a part of the transaction she had with Buckingham at the time she bought the Cutsinger note from him. In fact, there seems to have been no issue made in the evidence as to the fact that Buckingham

put up the Cutsinger note as collateral for the $800 loan under an agreement with plaintiff. This fact seems to have been assumed by all parties and therefore the evidence on this point is not as emphatic as is usually found but the whole record is clear upon this point.

Plaintiff testified at this same meeting that she tendered the bank the sum of $150, being the balance 'ue on her indebtedness of $800, evidenced by her note in the latter amount to Buckingham, and that she demanded of the bank the Cutsinger note and deed of trust but the same was refused. Plaintiff never had possession of the note, the note was not endorsed to her but was endorsed with recourse by Buckingham. Under the circumstances she is not entitled to the possession of the note until she at least had tendered the amount due the bank on the $800 note, which was $150. [38 Cyc. 2044; Newman v. Trust Co., 189 Mo. 423, 445; Cooper v. Trust Co., 142 Mo. App. 610.] No steps were taken by the plaintiff to keep the tender alive if it was ever properly made, of which there is no evidence. The petition did not allege that the tender was made good by bringing the money into court at the trial, or by offering to do so. Nothing was done concerning the matter of tender after the tender testified to was made at the meeting described. Under such circumstances the tender has not been kept good and plaintiff was not entitled to this action. [Woolner v. Levy, 48 Mo. App. 469; Owens v. Mfg. Co., 162 Mo. App. 667; Hudson v. Glencoe Gravel Co., 140 Mo. 103, 114; Knollenger v. Nixon, 171 Mo. 445; Landis v. Saxton, 89 Mo. 375, 383.]

The demurrer to the evidence challenged plaintiff's right to recover and defendant is entitled to insist upon it in this court notwithstanding any theory that might be disclosed by the other instructions asked subsequently to the overruling of the demurrer. [Torrance v. Prior, 210 S. W. 430, 434, 433.]

The judgment is reversed. All concur.