W. H. EASTIN, Respondent, v. BANK OF HARRISONVILLE et al., Appellants.

In the Kansas City Court of Appeals, January 8, 1923.

1. **BANKS AND BANKING**: Debtor and Creditor: Where Depositor Gave Check on His Account to Bank for Forged Notes, His Right to the Deposit Was Not Affected or Reduced by the Giving of the Check, But Bank Was Liable for Amount of Deposit. Where a depositor gave a. check on his account to bank for certificate of indebtedness which he did not receive but instead received notes believing them to be such certificates which were worthless, being forgeries, *held* that the depositor not having thereby obtained anything for the check and no property of bank having been turned over to him in exchange for reduction made in amount of his deposit, the relation of debtor and creditor between bank and depositor created by deposit, was not affected by check and bank was liable to depositor for amount of the deposit.

2. ————: Apparent Authority: Acquiescence; Where a Bank Permitted Its President for Many Years to Act With All powers and Duties of an Executive Officer, it is Held Liable to Depositor for Amount of Check Given it for Forged Notes Which Depositor Was Fraudulently Induced to Purchase. Where a bank permitted its president for many years to act with all the powers and duties of an executive officer thereof, it is liable to a depositor induced by him to give a check to bank for forged notes.

3. ————: ————: ————: Where President of Bank, Acting Within the Apparent Scope of His Duties Induced Depositor to Purchase Forged Notes Which He Has no Authority to Sell, Rendered Bank Liable to Depositor Therefor. Although a bank president who was permitted for a long course of years to act with all the powers and duties of an executive officer thereof was not au-

thorized by bank to sell forged notes to a depositor, but violated his trust as an officer of bank in doing so and secretly and cor. ruptly acted for himself, the depositor being innocent in the matter, did not relieve bank from liability to depositor for amount of deposit.

4. ———: ———: ———: Fraud: Whether President of Bank Took Money Represented by Depositor's Check Which Depositor Was Induced by Him to Give for Forged Notes, or Whether it Merely Reduced the Amount of Bank's Apparent Liabilities or Decreased the Shortage of Cash in Bank, Held Not to Affect Right of Depositor to Recover Amount of Check. Whether a bank president who fraudulently induced a depositor to buy forged notes took money represented by depositor's check out of the bank, or wheth- er the check merely served to reduce the amount of its apparent liabilities or to apparently decrease the shortage of cash in bank, *held* not to affect depositor's right to recover amount of check which president of bank was enabled to obtain only because of his position and by virtue of the powers apparently vested in him.

5. ELECTION OF REMEDIES: Depositor Filing Demand Against Estate of Bank President for Amount of Check Given for Forged Notes, Held Not to Have Elected Thereby to Pursue His Estate, Absolving Bank, as Both Were Liable, Though Depositor Could Have but One Satisfaction. Where depositor filed a demand against the estate of president of a bank for amount of check given for forged notes which he induced depositor to purchase, *held* that the principle of election of remedies has no application, as the bank was and had been for years in a failing condition and both it and its president were liable, though depositor could have but one satisfaction.

6. EVIDENCE: Account Book: Private Record: Self-serving State- ment: ''Blotter'' of Bank and Entry of President Therein Held not Evidence Against Depositor in Action by Him to Recover Amount of Check Given for Forged Notes. The "blotter" of a bank and the statement written therein by president that cer- tificates of indebtedness were sold in exchange for a check, which check in reality was given by depositor for forged notes, pur- chased by him at the solicitation of the bank's president, *held* not evidence against depositor, the "blotter" not being an account book, nor a part of the account between the bank and depositor, but a private record of the bank, and the entry made thereon by its president was a mere self-serving statement not binding upon the depositor.

7. BANKS AND BANKING: Actions: Money Had and Received: Where Basis of Cause of Action by Depositor Was Not the Fraud

Eastin v. Bank of Harrisonville.

of President of Bank Who Sold Him Forged Notes Therefor, but the Fact That Bank Had His Money on Deposit, Part of Which it Never Paid, Held a Case Peculiarly Suited to the Action for Money Had and Received. Where a depositor who was induced by fraudulent representations of bank's president to give check to bank for forged notes, instituted an action for money had and received, the basis of the cause of action was not the fraud of the bank's president, but the fact that the bank had depositor's money on deposit, part of which it has never paid.

8. EVIDENCE: Parol Evidence: Parol Evidence Held Admissible to Show Lack of Consideration for Check Given Bank. In an action by depositor to recover amount of a check where depositor showed that he received no consideration therefor, the principle that a written instrument cannot be varied by parol has no application.

9. APPEAL AND ERROR: Evidence: Witnesses: Admission of Evidence of Plaintiff as to Transaction With Decedent, Held Not Ground for Reversal Where Evidence as to Same Transaction Was Given by Competent Witnesses. Where a depositor gave check to bank for forged notes which he purchased upon fraudulent representations made by bank's president who had died, under section 5415, Revised Statutes 1919, as reenacted Laws 1921, p. 392, depositor's wife was a competent witness and his son was also competent to testify fully to the facts of the transaction between president of bank and depositor, there being no evidence disputing the testimony, *held*, even if depositor was not a competent witness on account of president of bank being dead, such error, if any, ought not to reverse the case, especially where it was tried before the court.

Appeal from the Circuit Court of Cass County.—*Hon. Ewing Cockrell*, Judge.

AFFIRMED.

*W. D. Summers* and *Roscoe C. Summers* for respondent.

*J. S. Brierly* and *A. A. Whitsitt* for appellant.

TRIMBLE, P. J.—Plaintiff, in an action as for money had and received, sued to recover the sum of $5021.87 which was on deposit with the Bank of Har-

risonville, to the credit and in the name of the plaintiff. On the 3rd of February, 1920, the State Bank Examiner took possession of said bank, it having been found to be in an insolvent condition. Thereafter, the State Bank of Harrisonville was organized and by contract with the former bank took over its assets for the purpose of liquidating the same, and for this reason the new bank was made a party defendant herein so that whatever judgment might be obtained against the old bank would be paid by the new to the extent at least of the assets of the old applicable to the payment, *pro rata,* of plaintiff's claim along with the former bank's other creditors.

The case was tried before the court without a jury and judgment for the full amount asked, together with interest, was rendered. The defendant Bank of Harrisonville has appealed.

There is no question but that on and after April 23, 1918, plaintiff had $7000 on deposit in the Bank of Harrisonville, it being the proceeds of his farm, which he had sold.

A. L. Burney was president of the bank and had plaintiff's complete confidence as well as the confidence of the entire community; and the bank was supposed to be sound and strong financially.

Burney told plaintiff that the bank needed some money but did not want its borrowers to know it was selling their paper, and that if plaintiff would buy certain of its paper, he could obtain a good rate of interest on his money instead of letting it lie idle in the bank. On May 15, 1918, plaintiff, in company with his wife and son, went to the bank and there Burney exhibited three notes which purported to be payable to the bank and which aggregated, with the interest then apparently due thereon, about $100 more than the amount of the check hereinafter referred to. Plaintiff was old and could not see well and relied upon what Burney told him. After figuring up the amount due in the aggregate on the three notes, Burney drew up a check on plaintiff's account for the sum of $5021.87 and had plaintiff to sign it and then

plaintiff paid him $100 out of his pocket to make up the amount of the three notes. Burney then, as president, endorsed the three notes over to plaintiff and charged the plaintiff's check against his account reducing it to that extent. Afterwards, when the interest on the notes became due according to their terms, Burney had plaintiff to leave the notes with him so that (so he said) he might collect it for plaintiff without letting the payors know that the bank did not own them. Burney credited plaintiff's account with sums of interest claimed to have been collected on the notes and returned them to plaintiff.

In 1920, as above stated, the bank failed, and it was then discovered that Burney had, by manipulation of the books, kept them fair on their face and showing the proper balances, although as a matter of fact the bank was several hundred thousand dollars short in its funds and had been in an insolvent or failing condition for five or six years.

It was then also discovered that the notes Burney had sold plaintiff, and which purported to be signed by solvent persons of the county, were forgeries.

The check which Burney drew up and had plaintiff to sign was payable to "C. I." though plaintiff did not know it, being unable to see on acount of age as heretofore stated. The bank's bookkooper testified that "C. I." was an abbreviation for "Certificates of Indebtedness" issued by the U. S. Government for short loans. On what is called the Bank's "blotter" Burney had entered the transaction with plaintiff as being a sale to him of Certificates of Indebtedness. The evidence is clear, positive and direct, however, that no Certificates of Indebtedness were sold to plaintiff and that all he received for his check was the three notes which were worthless, being forgeries. Indeed, there is no evidence that the Bank owned or had any Certificates of Indebtedness. The bookkeeper says the books show that they did but she also states that the books were falsified by Burney to such an extent that they were wholly unre-

Eastin v. Bank of Harrisonville.

liable, and that all that she knew about the matter was what the books showed on their face. There was certainly no evidence to show that any Certificates of Indebtedness left the bank, nor was there any evidence as to where the proceeds of the check plaintiff gave, or the cash represented thereby, went. All that does appear is that plaintiffs deposit was reduced the amount of the check.

It is manifest, therefore, that plaintiff got nothing for his check and no property of the bank was turned over to him in exchange for the reduction made in the amount of his deposit. Hence, unless plaintiff's rights are affected by the matters hereinafter discussed, the relation of debtor and creditor between the bank and plaintiff, created by the deposit, was not affected by the check, but the bank still owed plaintiff the same amount of money. [Musgrove v. Macon County Bank, 187 Mo. App. 483, 494; Dixon v. Jackson Exchange Bank, 149 Mo. App. 585.] The deposit made the bank the debtor of the plaintiff, and though, prima facie, the check signed by plaintiff might show a proper disposition of that part of the deposit, yet when the evidence clearly showed that plaintiff got nothing whatever for the check, the burden was then on the bank to show that he did or that there was a proper disposition of that part of said deposit. [Padgett v. Bank of Mountain View, 141 Mo. App. 374.] Nothing of this kind was done however. So that, unless plaintiff's rights are affected by the matters hereinafter discussed, which are urged by defendants, plaintiff's right to the deposit is not affected or reduced by the fact that the above-named check was given.

Point seems to be made that as Burney was president and not cashier of the bank he was not invested with the apparent authority plaintiff thought he had, and, therefore, the latter is without remedy. It is perhaps true that, ordinarily, the powers of a bank president are not so important or extensive as those of the cashier. The former is, more strictly speaking, the executive

agent of the board of directors, while the cashier is the bank's managing and executive officer. But, in this case, it is manifest that Burney was permitted by the bank to act with all the powers and duties of an executive officer of the bank. In fact throughout a long course of years he not only did this, but he was the bank—such as it really was. There is nothing in the evidence anywhere to show that he had merely the technical duties which are ordinarily limited to a president. "General usage of the bank, or long acquiescence by it in a course of action by the president, or any facts constituting a holding out of the president by the bank as having a right to act for it, may lay a foundation for authority actual or inferred." [3 R. C. L., 441.] So that there is nothing in any contention that the bank cannot be held liable merely because the office Burney held was that of *president* instead of *cashier*. It is doubtless true that the bank should not be held liable for the acts of its executive officer where those acts are wholly without the scope of his powers and duties so that the party dealing with him must, as a matter of law, be charged with notice of that fact. Such, for example, is the case of Commercial Bank of Beeville v. First National Bank of Cuero, 80 S. W. 601. It is not in point for appellants, for that was a case where the bank was sought to be held liable for its president's representations as to the genuineness of the signature to a certain note procured for another bank in order that it might lend money to a third person. The procuring of such a note and the making of representations in regard thereto were clearly matters outside the scope of the officer's duties to the bank of which he was an officer.

But that is not the situation here. Burney was the bank, and what he did in the transaction with plaintiff was not outside the apparent scope of his duties. It is true, Burney was not authorized by the bank to do what he did and, indeed, he was violating his trust as an officer of the bank. But plaintiff did not know this and was not a party to it. He was innocent in the mat-

ter. The fact that Burney was in fact not acting in be-half of the bank but secretly and corruptly acting for himself makes no difference. [Third National Bank of St. Louis v. St. Charles Savings Bank, 244 Mo. 554, 577.]

It is true, Burney had no power to sell assets of the bank without a resolution of the Board of Directors giving him that authority, and had he sold real assets of the bank instead of forgeries to plaintiff, no title thereto would have passed. The bank would still have had title to the assets and the plaintiff would have still owned the deposit. The situation is not a whit changed by the fact that the subject of the transfer was not genuine but forged notes, except that plaintiff has re-ceived nothing for his check and is not called upon to give up anything before asserting his right to the de-posit. The plaintiff was innocent of any wrongful in-tent. The bank had the money on deposit and the plain-tiff never received anything therefor. He is, consequent-ly, entitled to a judgment for the amount of the check.

It matters not whether Burney then took the money, represented by the check, out of the bank or whether the check merely served to reduce the amount of its ap-parent liabilities or to apparently decrease the shortage of cash in the bank. Burney did what he did as an offi-cer of the bank and was enabled to obtain plaintiff's check only because of his position, and by virtue of the powers apparently vested in him. Plaintiff was dealing with the bank through Burney as its agent, not with Burney individually. [Miles v. Macon County Bank, 187 Mo. App. 230, 238-9, 247-8; Morse on Banks and Bank-ing, secs. 80, 89.] To hold that under such circumstances Burney was the agent of the plaintiff would leave per-sons dealing with the bank to suffer the consequences of the fraud of the bank officer, when it is only by virtue of the fact that the bank has placed him in that situation that he is enabled to perpetrate a fraud. [Chapman v. First National Bank, 72 Oregon, 492, 497.]

It is urged that as plaintiff filed a demand against

the estate of Burney, there was an election to pursue him whereby the bank was absolved. The principle of election of remedies has no application here. The bank was and had been for years in a failing condition. Both it and Burney were liable, though, of course, plaintiff can have but one satisfaction. [Secs. 11763 and 11764, R. S. 1919; 2 Clark & Skiles on Agency, 1234; Eads v. Orcutt, 79 Mo. App. 511; Johnson v. Conrades, 232 S. W. 680.]

The "blotter" of the bank and the statement therein written by Burney that certificates of indebtedness were sold in exchange for the check, was not evidence against plaintiff. It was not an account book, nor part of the account between the bank and plaintiff. It was nothing more than a private record of the bank and the entry Burney made thereon was a mere self-serving statement not binding upon plaintiff. [Secs. 5410, 5411, R. S. 1919; Miller v. Dilkes, 1917 "D" Ann. Cases, 555 and note to same, pp. 559-561.]

The ground of the action is that of money had and received. The basis of the cause of action is not the fraud of Burney but the fact that the bank had plaintiff's money on deposit, part of which it has never paid. Hence, it is a case peculiarly suited to the action for money had and received. [Third Nat'l Bank v. St. Charles, etc., Bank, 244 Mo. 554, 582.]

The principle that a written instrument cannot be varied by parol has no application to this case. What plaintiff showed was that he got no consideration for the check he gave.

Under section 5415, Revised Statutes 1919, as re-enacted March 29, 1921, Laws 1921, p. 392, plaintiff's wife was a competent witness. His son was also competent to testify and both of them did so. They testified fully to the facts of the transaction between Burney and plaintiff. There was no evidence disputing these facts. Under these circumstances, even if plaintiff himself was not a competent witness on account of Burney being

dead, still such error ought not to reverse the case, especially where it was tried before the court. [Prickett v. New Orleans, etc., Line, 13 Mo. App. 436; Young v. Hudson, 99 Mo. 102; Deal v. Cooper, 94 Mo. 62.]

The judgment should be, and is, affirmed. All concur.