CLYDE C. ARNOLD, RESPONDENT, v. SECURITY BANK OF ST. JOSEPH, APPELLANT.*

Kansas City Court of Appeals. May 24, 1926.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, p. 1335, n. 71; 4CJ, p. 701, n. 47; p. 1068, n. 22; Banks and Banking, 7CJ, p. 665, n. 78; p. 667, n. 99; p. 670, n. 42; Limitations of Actions, 37CJ, p. 841, n. 53; p. 1149, n. 17; Money Received, 41CJ, p. 56, n. 85; p. 64, n. 86, 87, 90, 91, 93, 94, 95, 97, 98; p. 65, n. 2, 17; p. 66, n. 33; Trial, 38Cyc, p. 1548, n. 24; p. 1613, n. 16.

*Eastin & McNeeley* for respondents.

*Groves & Watkins* and *R. L. Douglas* for appellant.

ARNOLD, J.—This is an action *in assumpsit* for money had and received.

Defendant is a banking corporation, organized and existing under the laws of the State of Missouri and located at St. Joseph in said State. The original petition herein was filed on April 21, 1923, and on February 4, 1925, by leave of court, an amended petition was filed. On the same day defendant filed its motion to strike the amended petition from the files upon the grounds that the same was a departure and stated a different cause of action. The motion to strike out was overruled and defendant thereupon filed a term bill of exceptions against the said action and ruling of the court. The term bill of exceptions was allowed and by order of the court was made a part of the record herein.

The facts shown are that the plaintiff Clyde C. Arnold was, for a number of years, a customer of defendant bank; that at some time prior to August, 1917, he deposited the sum of $1500 with said bank for which he received a time certificate of deposit, due in six months and drawing interest at the rate of four per cent. On January 29, 1917, plaintiff indorsed said certificate in blank and delivered it to E. V. Cumberford, defendant's cashier, which the alleged understanding that in lieu of said certificate plaintiff was to receive a good bankable note drawing a higher rate of interest than the certificate of deposit.

At this point there is a sharp conflict in the evidence as to what was said by the parties. Plaintiff and his wife who was with him at the bank at the time the certificate was indorsed and delivered both testified that they were first approached by Mr. Cumberford, the cashier, with the suggestion that they leave the money with the bank to secure a higher rate of interest on a bankable note which the bank would deliver to plaintiff, and that the bank would stand behind such note. Mr. Cumberford, the cashier, testified that Mr. and Mrs. Arnold had requested him to find an investment for them that would pay a higher rate of interest than the certificate of deposit. Cumberford stated he negotiated the loan for one F. W. Paschal who, at the time, was a consulting attorney for the bank, in the amount of $1500 for which a note was given, dated January 29, 1917, payable to E. V. Cumberford, with interest at seven per cent, per annum from date, signed F. W. Paschal, and that said note was indorsed on the back in blank by the payee; that the note was made payable to Cumberford personally, as a means of enabling him to negotiate

a loan for Paschal; that he (Cumberford) placed the money directly to Paschal's credit in what was designated on the book accounts of the bank as his "special account." Cumberford stated that he explained fully to plaintiff and Mrs. Arnold that it was not a bank transaction but that the note was good and that he, personally, would indorse it.

It is in evidence that at the time the certificate of deposit was surrendered, as above stated, Cumberford gave to plaintiff a receipt for a note for $1500 not specifically described, and signed it E. V. Cumberford, individually. This receipt was not introduced in evidence but the testimony shows it had either been surrendered to Cumberford and destroyed, or that it had been lost or misplaced by plaintiff. The note was not delivered to plaintiff at that time but was held in the bank. The interest on said note was paid by or through the bank up to and including January, 1922. On June 12, 1922 the defendant bank was closed by the State banking department, at which time Cumberford and the other directors resigned. A few weeks later, the bank was reorganized, a new board of directors elected, and the bank reopened.

It is shown that in March, 1918, plaintiff and his wife moved to Texas, at which time plaintiff borrowed $500 from defendant bank, executing his note therefor. This note was renewed several times and was still in possession of the bank at the time of filing the suit herein. The Paschal note remained in possession of the bank until January, 1922, when it was delivered to the wife of plaintiff and the receipt above mentioned was surrendered to Cumberford.

The circumstance of the borrowing of the $500 from defendant by plaintiff is explained by plaintiff who stated that he and his wife desired some money to defray their expenses in moving to Texas; that he wanted $500 of the $1500 involved in this suit, and that the transaction was as follows:

"Q. At that time you borrowed five hundred dollars from the Security Bank? A. No, I never borrowed.

"Q. Did you give your note to the bank? A. I gave my note, and I asked him why and he said 'that will be all right. We will keep that for you and when you settle the other, we will square the deal.'

"Q. He said 'when you collect the note that I am holding in the bank, you can pay the debt?' A. He says, 'any time I pay you that note, you can pay us the five hundred dollars and I will not charge you any more interest on this than you are getting on your note—' and I got five hundred dollars from Mr. Cumberland on this note.

"Q. They would charge you interest on your note that you had given the bank for five hundred dollars and would pay you interest on the Paschal note, is that right? A. He would pay me what was coming. He would take it off my note that I owed him.

"Q. He would take the interest money out? A. He would take the interest money out of the five hundred dollars and send me the balance."

Indorsements upon the back of the $1500 note shows interest paid as follows:

"E. V. Cumberford.

| | |
|---|---|
| Cr. March 4, 1918 Int. | $ 90.00 |
| Cr. March 4, 1919 Int. | 60.00 |
| Cr. March 4, 1919 Int. | 30.00 |
| Cr. Int. to January 29, 1920 | 90.00 |
| Cr. Int. to January 29, 1921 | 105.00 |
| Cr. Int. to January 29, 1922 | 105.00" |

Plaintiff's wife testified that about February 1, 1922, when she drew the interest on the $1500 note, Cumberford demanded the receipt given by him, heretofore mentioned, and that she surrendered it to him and he delivered to her the Paschal note; that until then the Paschal note had never been seen by plaintiff or his wife and had not been in the possession of either of them.

The cause was tried to a jury resulting in a verdict and judgment for plaintiff in the sum of $1500. Motions for a new trial and in arrest of judgment were overruled and defendant appealed.

The first point demanding our consideration is the action of the court in overruling defendant's motion to strike out plaintiff's amended petition. As stated above, defendant filed a term bill of exceptions to the said ruling of the court, thereby saving its exceptions. The point was saved, also, in the motions for a new trial and in arrest of judgment but is not included in the assignments of error nor referred to in the briefs. We must conclude, therefore, that the point is abandoned and requires no further discussion.

It is charged that the court erred in refusing to give defendant's instruction in the nature of a demurrer offered at the close of all the evidence. In support of this charge it is urged that it was incumbent upon the plaintiff, as a condition precedent, to his right to maintain this action, to plead and prove a return, or offer to return, the Paschal note held by plaintiff at the time of the trial, which he failed to do.

The amended petition charges that defendant is, and was, a banking corporation and that up to June 12, 1922, E. V. Cumberford was the cashier thereof, and as such was in charge and control of its affairs and performed the usual duties of a cashier, accepted money on deposit, made loans for said bank, discounted commercial paper, and managed and handled the funds on deposit, and

"Plaintiff further states that on the —— day of —— 1918, he had on deposit in said bank a sum of money in excess of $1500, and on said date defendant, by and through its officers and agents,

promised and agreed with plaintiff that if he would turn over to defendant the sum of $1500 out of his said account, defendant would deliver to him a promissory note for a like sum signed by a solvent maker and bearing interest at the rate of six per cent per annum; that plaintiff, pursuant to said promise and relying thereon, gave to defendant and defendant accepted from plaintiff the said sum of $1500; but said defendant failed and refused ever to turn over to plaintiff any note signed by a solvent maker, pursuant to said agreement; that upon said failure, the defendant promised and agreed to return to plaintiff the said sum of $1500 but has failed to do so, though demand therefor has often been made.''

As to the point urged that no tender of the return of the $1500 Paschal note was made, it must be concluded that the point is not well taken. The record shows that during the progress of the trial plaintiff's counsel did make tender of the return of the note. There is testimony tending to show that the note was in the possession of defendant bank until about February 1, 1922, and that the bank was closed soon after that date. Moreover, from the pleadings, it is clear that this is an action for money had and received, and not one in conversion.

In support of its contention defendant urges that plaintiff is without the right to maintain this action unless it be shown that there was a tender of the note, and cites the case of Andrews v. Bank, 208 Mo. App. 366. However, that is a case in conversion. In the case at bar plaintiff alleges that the Paschal note was not a bankable note, that it was not signed by a solvent maker (as per agreement) and that it was of no real value. It was upon this theory that plaintiff tried his case and we find there is substantial testimony in support thereof.

It is also plaintiff's theory that the note was but an added inducement to plaintiff to surrender his deposit of $1500, and therefore that the tender of the note was not required of him since this is a case *in assumpsit* for money had and received. The cause was tried upon the theory that the $1500 was left with the bank upon the agreement that plaintiff was to receive a bankable note, signed by a solvent maker; that this was not done and therefore plaintiff is entitled to a return of the $1500. For this reason, we hold a tender unnecessary, and there was no error in this respect. The constitutent elements of a petition in a suit for money had and received are given in 27 Cyc. 878, as follows:

''It is necessary to allege that the money was had and received for plaintiff's use. But it is not necessary to allege from whom the money was received for plaintiff's use, nor that there was an understanding that defendant was to hold the money received for plaintiff. nor that defendant received it in trust for plaintiff. At common law it is usual, and perhaps necessary, in a count for money had and received, to allege a promise. But under the code it has been held that

no promise need be alleged, the facts being stated out of which the cause of action arose. An allegation of demand, it is said, is usual; but according to a number of decisions, it is unnecessary. The failure of defendant to pay the money must be alleged. It has been held not essential to the jurisdiction of the parties, or of the subject-matter of the action, to allege where the cause of action accrued."

It is urged by defendant that the amended petition upon which the case was tried fails in the respects above named, but we think this position untenable, as is shown by an examination of the petition already quoted.

There was testimony tending to support the allegations of the petition, at least, of sufficient substantiality to take the case to the jury, and there was no error in refusing the instructions in the nature of demurrers.

It is also insisted that by virtue of sections 11752 and 11762 the cashier or other officer of a bank is prohibited from indorsing or discounting any paper of the bank for money loaned without express authorization from the board of directors. True, there is no claims or showing that such authority was given by the board of directors in the instant case. But we think there is no merit in this argument. There is no allegation in the petition that the Paschal note was sold or discounted, and the case therefore is not within the provisions of the statute just cited.

Defendant's position in this respect is contradictory within itself. It is urged by defendant that the transaction complained of was a personal dealing with defendant's cashier Cumberford in which the bank was not involved. For defendant now to claim that the cashier was not authorized by the board of directors to do the thing which has been done is a position contradictory, inconsistent and untenable. It follows that defendant cannot plead and attempt to prove that it was not involved in the transaction and then predicate an error upon the theory that it was involved.

It is also urged that the action is barred by limitation in that it should have been brought within five years, being an action upon an implied promise. This contention is refuted by testimony showing that interest was paid on the $1500 as late as January 29, 1922. This action was instituted the following April. There is no merit in this contention. Moreover, it is the law that the statute does not begin to run until demand and refusal. The general rule is stated in 37 C. J. 841, as follows:

"Where a deposit of money is made the general rule is that a cause of action accrues in favor of the depositor against the depository only upon demand and refusal of the assertion of some adverse claim by the depository." [See, also, Battle v. Crawford, 68 Mo. 280.]

In further support of the first assignment of error, it is urged that it is incumbent upon plaintiff to show that the bank actually received the money. It is shown by the record that the money involved passed into the possession of the bank when deposited and the time certificate was issued against it. It is also shown that the said time certificate was indorsed in blank by plaintiff and his wife and according to evidence introduced in their behalf, the money remained in the bank. This was proof sufficient to take the case to the jury and fully answers defendant's objection in this respect.

A charge of error is directed against plaintiff's instruction No. 1 on the grounds, first, that the cashier had no authority to accept money for the bank beyond the scope of his authority as cashier. This point has been determined against defendant in what we have already said. Instruction No. 1 purports to cover the entire case and directs a verdict. It is insisted that plaintiff tried his case upon the theory that the bank had accepted his money upon an agreement and understanding to give him a bankable note of a solvent maker and had failed to do so. It is urged the instruction complained of abandons this theory and assumes, without supporting evidence, that the note was owned by the bank, that it did not represent money loaned and that it directs a recovery "even though the note may have been perfectly good."

An examination of the instruction shows that it requires a finding of fact on every element of the case, as presented by the pleadings and proof. It is necessary to say that there is evidence from which the jury reasonably might conclude that Cumberford, acting as cashier of the bank, accepted plaintiff's money upon an agreement to give him a note of a solvent maker. The instruction covers this theory of plaintiff's case. It is his position that the bank secured his money through the machinations of its cashier under the promise to deliver to plaintiff a bankable note of a solvent maker, and that this promise served as a ruse to get control of plaintiff's money. The instruction requires the jury to find that in the matter in question, Cumberford was representing defendant bank and that he represented and stated to plaintiff that defendant could use the said sum of $1500. There was proof upon which this clause in the instruction rests. The instruction is not erroneous in this respect.

The court refused defendant's instructions "C" and "D" and this is charged as error. Instruction "C" sought to tell the jury that plaintiff could not recover on account of the alleged representations made by Cumberford as to the solvency of the note and that the bank would stand good for it, and that unless the plaintiff had proved that the defendant bank actually received and got the benefit of the said $1500, they should find for defendant. The trouble with this instruction is that it seeks to predicate a finding against plaintiff upon

a different theory from that presented in the petition and proof, to-wit, that the deal was one between plaintiff and Cumberford personally.

Instruction "D" is open to the same objection, and the refusal of both these instructions was proper.

It is charged the court erred in refusing defendant's instruction "F" upon the question of limitation. We have already decided this point and under our ruling, defendant was not entitled to the instruction.

The refusal of defendant's instruction "E" was proper because it omitted the element of knowledge by plaintiff that defendant bank did not own the Paschal note, nor have any interest therein, but the court modified the instruction by inserting certain words supplying the deficiency just mentioned and then gave the instruction as "G."

Finally, since there is testimony tending to show that plaintiff was informed by the cashier that the bank was to handle his money and he was to look directly to the bank, that the money would be returned to him in time, and that in the meantime the bank would turn over to him a solvent note; that plaintiff was in complete ignorance as to the particular note and the true situation as to it, the question of the cashier's ownership, or his right to transfer the note, is not material under the facts in evidence and the pleadings. Furthermore, we think the fact that five years after the transaction the note was found to be of no value was not a bar to plaintiff's right of recovery. [Eastin v. Bank, 213 Mo. App. 130.] We fail to find reversible error of record. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.