MANCHESTER MILL & ELEVATOR CO. v. STRONG et al.

(Circuit Court of Appeals, Eighth Circuit. April 5, 1916.)

No. 4524.

1. CORPORATIONS ⊜►374—POWERS—NAME.

Under Gen. St. Kan. 1909, § 1699, which provides, among other things, that the purposes for which private corporations may be formed are the conversion and disposal of agricultural products by means of mills and elevators, or otherwise, and section 1701, providing that the corporate

⊜►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

name of every such corporation shall indicate the character of the business to be carried on by it, the adoption as a corporate name of "M. Mill & Elevator Co." by a corporation whose charter stated that its purpose was, among other things, to buy, sell, and handle all kinds of grain, does not limit its business to the operation of a mill and elevator, so as to render unauthorized contracts for the sale of wheat.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1517, 1518; Dec. Dig. ☞374.]

2. CORPORATIONS ☞425(4)—POWERS OF AGENTS—GENERAL MANAGER—ESTOP-PEL.

Where the chief executive officer of a milling and elevator company alone transacted its business, the other officers and directors being farmers or bankers, and made contracts in its behalf with the acquiescence of the other directors, he was held out to third parties as general manager of the company and as authorized to make contracts, though he was never formally appointed as such, and the corporation is estopped to deny his authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1700, 1701; Dec. Dig. ☞425(4).]

3. TRIAL ☞253(6)—REQUESTED INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

A requested instruction directing a verdict for defendant, which was predicated on unproven facts and ignored facts bearing on the vital issue of the case, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 618; Dec. Dig. ☞253(6).]

4. TRIAL ☞260(1)—REQUESTED INSTRUCTIONS—REPETITION OF GIVEN IN-STRUCTION.

A requested instruction, which so far as it contained correct and applicable principles of law had been given in the main charge, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. ☞260(1).]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Involuntary petition in bankruptcy by B. Strong and others against the Manchester Mill & Elevator Company. From a judgment adjudicating the defendant a bankrupt, it brings error. Affirmed.

Charles Blood Smith, of Topeka, Kan. (Samuel Barnum, of Topeka, Kan., on the brief), for plaintiff in error.

E. R. Morrison, of Kansas City, Mo. (Hurd & Hurd, of Abilene, Kan., and Morrison, Nugent & Wylder, of Kansas City, Mo., on the brief), for defendants in error.

Before ADAMS, Circuit Judge, and REED and ELLIOTT, District Judges.

ADAMS, Circuit Judge. The B. Strong Grain & Coal Company, Goffe & Carkener, and Norris & Co. filed an involuntary petition in bankruptcy against the Manchester Mill & Elevator Company, plaintiff in error in this case. The petition alleged, in substance and effect, that the several petitioning creditors had claims against the Elevator Company arising out of contracts for the purchase by them from the Elevator Company of certain quantities of wheat for future delivery,

and that the Elevator Company failed and refused to make deliveries according to the terms of their several contracts, to their damage in the aggregate sum of $5,000. The petition further alleged that the Elevator Company was insolvent and within four months prior to the institution of the proceeding had committed an act of bankruptcy by executing a mortgage conveying its property to one O. C. Barner, to secure the payment of a pre-existing indebtedness in the sum of $8,500.

The Elevator Company answered the petition, alleging that the contracts made with the several petitioning creditors were made without the authority of the corporation and in conflict with the provisions of its by-laws, and that the claims of the petitioning creditors arose out of gambling transactions, and were illegal and void, under the provisions of sections 5167 and 5176 of the General Statutes of Kansas of 1909.

In due course the issues so joined came on for a hearing before a jury in the District Court, and at the conclusion of the evidence the cause was submitted to the jury on a full charge by the court, with instructions to answer the following questions:

(1) "Was the Manchester Mill & Elevator Company insolvent at the date the petition was filed in this case, which date was the 4th day of December, 1914?" To which the jury answered, "Yes."

(2) "On that date do you find the bankrupt, the Manchester Mill & Elevator Company, was indebted to the B. Strong Grain & Coal Company, petitioning creditor herein? If so, in what amount?" To which the jury answered, "$1,552.50."

(3) "Do you find the Manchester Mill & Elevator Company was indebted to Norris Grain Company, petitioning creditor herein, on December 4, 1914? If so, in what amount?" To which the jury answered, "$8,271.02."

(4) "Do you find the Manchester Mill & Elevator Co. was indebted to Goffe & Carkener, petitioning creditor herein, on December 4, 1914? If so, in what amount?" To which the jury answered, "$2,800."

(5) "Do you find the Manchester Mill & Elevator Company, being insolvent, made a mortgage on its property to O. C. Barner to secure a past-due indebtedness of $8,500, as charged in the petition?" To which the jury answered, "Yes."

(6) "Were the contracts made by McAndrews in the name of the Mill Company with the petitioning creditors, or any of them, wagering or gambling contracts?" To which the jury answered, "No."

Thereupon the Elevator Company was duly adjudicated a bankrupt, and now prosecutes its writ of error to reverse that judgment.

There were many formal assignments of error, but counsel for the bankrupt, in a manifest effort to conform in their brief to our rule 24, specified the ones relied on for reversal of the judgment in the following way:

"While it was asserted in the answer that all these contracts were void and illegal as gambling transactions, the respondent submitted no proof to sustain such defense. It, however, urged upon the trial court the lack of power in the corporation itself to enter into these speculative contracts in the first instance, and also denied that McAndrews, the president of the corporation, had any authority, as president, to bind the corporation by executing these contracts. These are the two principal questions involved in this hearing.  *  *  *"

[1] The first contention is that the Elevator Company was without power to enter into the contracts upon which the petitioning creditors

predicated their claims; that the contracts were not made for any legitimate purpose for which the Elevator Company was organized. The company was organized under the general law of the state of Kansas concerning private corporations (General Statutes of Kansas 1909, § 1699), which provides, among other things, that the purposes for which private corporations may be formed are:

"(39) The conversion and disposal of agricultural products by means of mills, elevators, markets and stores, or otherwise."

Section 1701 of that law provides that the corporate name of every such corporation " * * * shall indicate by its corporate name the character of the business to be carried on by the corporation."

It is argued that the adoption by the corporation of the corporate name "the Manchester Mill & Elevator Company" imposed a limitation upon the scope of its business, confining it to the operation of a mill and elevator, thereby excluding the purchase and sale of wheat as any part or portion of its legitimate business. It is noticeable that clause 39 of section 1699 provides for the creation of corporations for "the conversion and disposal of agricultural products by means of *mills, elevators,* markets and stores, or otherwise." This, in our opinion, necessarily implies that the operation of mills and elevators is an appropriate and lawful method to be resorted to for "converting and disposing of agricultural products." If so, the corporate name of the plaintiff in error "Mill & Elevator Company" indicates that a part of its business is the purchase and sale of wheat.

In harmony with this view, the charter of the defendant corporation, as granted to and accepted by it, specified that the purpose for which it was created was "to conduct a general grain and milling business, to buy, sell, and ship and handle any and all kinds of grain, manufacture flour, feed and feed meal, alfalfa meal and alfalfa product, any and all other products of grain, * * * and to do and perform all other acts necessary for the carrying on of the management of the above-named business."

The case of Ginrich v. Mill Company, 21 Kan. 61, is cited in support of their contention. All that case decides, in any way affecting this, is that under the provision of the corporation law of Kansas, providing for the creation of private corporations for "the conversion and disposal of agricultural products by means of mills," etc., a corporation may be created to "build and create a flouring mill." This, instead of supporting the contention of plaintiff in error, in our opinion, necessarily implies that the maintenance of a flouring mill and elevator is germane to the general business of converting and disposing of agricultural products and that such a mill or elevator is among the lawful means for accomplishing the purpose of converting and disposing of such products. We, therefore, are unable to give our assent to the proposition that the business of buying and selling wheat is so foreign to the permissible business suggested by the corporate name of plaintiff in error as to render any contracts for purchasing wheat void.

[2] The next contention of the plaintiff in error is that McAndrews, as president of the defendant corporation, had no authority to execute the contracts, for the breach of which the petitioning creditors as-

serted claims for damages. The evidence on this point disclosed, without substantial contradiction (employing now the language found in the bill of exceptions):

"That W. E. McAndrews owned a large majority of the stock of the Manchester Mill & Elevator Company; that the actual management of its business was practically solely done by said W. E. McAndrews; * * * that its mill and elevator were in charge of W. E. McAndrews; that all business of the company was done solely by the said McAndrews; that none of the other officers or directors of the company took any part in the management of the business, or operation of the elevator or mill, and that none of them, except the said McAndrews, had any experience of running concerns of this character, all of them being farmers, except one, who was cashier of a bank; that all of them knew that the said McAndrews was running said business and said plant; that in all the purchase contracts made with him by the petitioning creditors, the said creditors, and each and all of them, expected to receive the wheat under said contracts and that the dealings with McAndrews were in no wise, so far as they were concerned or had any knowledge of, deals amounting to wagers on the price of wheat; that as far as they knew McAndrews, acting on behalf of the respondent, intended and expected to carry out his contracts by the delivery of wheat thereunder."

McAndrews had never been formally elected general manager of the corporation, and his acts in executing the contracts in question were never formally approved or ratified at any meeting of the board of directors of the corporation. Evidence was also offered that several days before the charter of the corporation was applied for or granted the following by-law appears to have been adopted (and was offered in evidence by the defendant corporation), as follows:

"No debts or obligation shall be contracted by this company except upon the authority of the board of directors, and when such indebtedness shall be authorized, shall be evidenced by notes or contracts which shall be signed by the president and secretary of the company and duly approved by the executive committee before being issued."

At the time this evidence was offered no proof had been offered tending to show that any of the petitioning creditors had any knowledge of this by-law or its contents, and counsel for the corporation then admitted that they had no evidence and no such evidence would be offered. Whereupon an objection to the introduction of the by-law was sustained by the court.

On the foregoing evidence the court submitted the case to the jury in a charge ably covering all the legal questions in the case, and directed the jury to answer the several questions specified above. Before the jury left the box the defendant's counsel requested the court to give this instruction to the jury:

"You are instructed that the directors of a corporation are the body which, under the law, is authorized to make contracts for it. It may delegate authority to a general manager to conduct the ordinary business of the corporation and this is the usual authority existing in a general manager. If, therefore, you find from the evidence that the ordinary business of the Manchester Mill & Elevator Company was and is that of operating a flour mill and elevator, and that speculation on the price of grain was not the business in which said company was engaged, but that McAndrews without any specific authority from the directors, engaged in such speculation in the name of the company, and that no knowledge or notice thereof was possessed by the officers of the company, with the exception of said McAndrews, then and in that event you

are instructed that the contracts by the said McAndrews in the name of the Manchester Mill & Elevator Company were not binding upon said company and you must return a verdict for the respondent, the Manchester Mill & Elevator Company."

The court refused to give this instruction and defendant assigns this refusal as error. Before considering this specific assignment, we pass to the contention made and argued by counsel that on the facts shown McAndrews had no authority to execute the contracts for the purchase of wheat from the petitioning creditors. While the proof shows that McAndrews was never formally appointed general manager by the board of directors of the company, he was its chief executive officer and acted as general manager, even to the extent of transacting, alone, all the business of the company. The other officers and directors, being farmers, had no experience in such business and took no part in the management of it. They all knew that McAndrews was running the business, and the record shows they acquiesced in his doing so, or at least never objected to it. In this way McAndrews, the president and chief executive officer, was left in sole charge of the business of the company and as such made contracts for and on behalf of the company. The mere fact that he had never been formally appointed or elected general manager, pressed upon our attention by attorneys for plaintiff in error, is of no consequence. He acted as such with the full knowledge of the other officers and directors, and so far as third parties, dealing with the company through him acting within the general scope of his apparent power, are concerned, he must be held to have been acting for the company as its duly authorized agent, and to have bound his company in so doing. In such circumstances, the corporation (on all principles of justice) must be held estopped from denying its liability for his action. Martin v. Webb, 110 U. S. 7, 14, 3 Sup. Ct. 428, 28 L. Ed. 49; Jenson v. Toltec Ranch Co., 98 C. C. A. 60, 174 Fed. 86; Ford et al. v. Hill, 92 Wis. 188, 66 N. W. 115, 53 Am. St. Rep. 902; McKiernan v. Lenzen, 56 Cal. 61, 63; Stokes v. Pottery Co., 46 N. J. Law, 237.

[3, 4] For reasons already stated in discussing the authority of McAndrews to execute the contracts in question, it appears that the facts disclosed by the proof did not warrant the giving of the instruction requested by plaintiff in error and refused by the court. This instruction was predicated upon unproven facts and ignored facts bearing upon the vital issue of the case—whether or not McAndrews was held out as a managing agent in sole charge of the business of the company. Moreover, so far as it contained correct and applicable principles of law, it had been given in the main charge. No error was committed in refusing to give it.

Some other assignments of error, not included in the specification of errors relied upon in their brief, were argued by counsel. To these we have given due consideration, and, finding no reversible error in any of them, the judgment of the District Court must be affirmed.