J. H. BAGNALL, Respondent, v. FRANK FEHR BREWING COMPANY, and CENTRAL CONSUMERS COMPANY, a Corporation, Appellants.

Kansas City Court of Appeals, May 10, 1920.

1. **EVIDENCE: Written Contract: Parol Evidence.** Where the writing does not purport to be a complete expression of the entire contract, the part reduced to writing may be enlarged by parol evidence.

2. **————: ————: ————: Oral Statements by Agent.** A statement in defendant's letter that it is sending its agent to see plaintiff in regard to the sale of its beverage indicates that the agent was sent to make an agreement with the plaintiff and the statements made by the agent are admissible in evidence as part of the contract.

3. **SALES: Rescission: Statu Quo.** Where plaintiff offers to return the balance of goods on hand and the proceeds from the sale of the goods he has already sold, he has done all that is necessary to put the defendant in *statu quo*.

4. **————: Agent's Warranty.** Under the evidence the trial court is *held* to have properly assumed that the defendant's agent was authorized to make the warranty in the sale of defendant's beverage to plaintiff, that it would not cloud for the period of a year.

5. **————: Return of Goods: Counterclaim.** Where after return of verdict and before entry of judgment the court had the plaintiff return to the defendant the goods plaintiff had purchased from defendant which he had on hand, and deducts from the amount of

the verdict, the value of the goods plaintiff was unable to return, it cannot be urged that the court committed reversible error in dismissing defendant's counterclaim as defendant has received that which he is entitled to.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson,* Judge.

AFFIRMED.

*J. M. Johnson* and *J. D. Hill* for respondent.

*Rey O. Douglas, Harvey C. Galbreath* and *Robert O. Worline* for appellants.

BLAND, J.—This is a suit to recover back the purchase price paid on a rescinded sale of 3000 cases of Ambrosia, a non-alcoholic beer manufactured by the defendant, Central Consumers Company. At the trial plaintiff dismissed as to Frank Fehr Brewing Company as its name was used merely as a trade name by the real party, defendant, Central Consumers Company.

The facts show that plaintiff was a wholesale liquor dealer in Kansas City, Missouri, and desired to add a non-alcoholic or near-beer line to his business. On the 31st day of January, 1917, plaintiff wrote defendant asking it to quote him the price of its temperance beer. On February 2, defendant wrote plaintiff quoting a price of $2.00 per case, each of two dozen bottles, f.o.b. Kansas City, and agreeing to buy back the cases and empty bottles at 90 cents a case. In reference to defendant's beverage the letter stated—

Fehr's Ambrosia is a beverage we have been selling for the past six or seven years. We warrant the same to be absolutely free of alcohol, requires no Goverment License to sell it and is chill-proof. We feel sure that a thorough test, by comparison with other beverages of similar character, will convince you that Fehr's Ambrosia is a standard, non-alcoholic beverage and can be made a profit producer for any one having the facility for handling same on a fairly large scale."

Some correspondence was had between the parties, and on February 26, 1917, defendant wrote plaintiff that their agent Mr. Lehrritter, would call on him in reference to the pending business. The letter, contained among other things, words laudatory of the beverage and stated "we hope that when our Mr. Lehrritter sees you that you will conclude to become our wholesale distributor in your section of the country." Afterwards Lehrritter saw plantiff. The price wanted for the beverage was higher than that charged by the manufacturers of competive beverages and plaintiff asked Mr. Lehrritter particularly if the beer would cloud and the latter warranted that it would keep at least a year without clouding. On March 6, 1917, defendant wrote plantiff that Mr. Lehrritter had reported that plaintiff had made a proposition to him in reference to the terms of payment, and offering to allow plaintiff to make payments for the beverage, bottles and cases in a specified manner. The letter further stated that defendant had an established rule to make one charge only for Ambrosia, or beer in bottles. Plaintiff on receipt of the letter wired defendant that the terms contained in the last mentioned letter was satisfactory.

There were 3000 cases of "Ambrosia" shipped by defendant to plaintiff on which plaintiff made payments in the sum of $4700.56. At the end of the summer season plaintiff had on his hands a total of 2380 cases, which included 1340 cases that plaintiff had sold a customer in Kansas. Near the beginning of the season defendant represented to plaintiff that it might not be able to fill future orders and plaintiff becoming alarmed that he might not be able to get a sufficient supply of the beverage for his summer delivery, purchased a large amount with the expectation of keeping it over until the following season in case he should be unable to dispose of all of it at the current season. He relied on the warranty that it would keep a year without clouding. Along in October, 1917, plaintiff discovered for the first time that the beverage had clouded and for that reason was

unmerchantable and worthless. He immediately notified defendant in writing of this fact and rescinded the sale, demanding back his money for the spoiled goods remaining on his hands and offering to return it, together with the bottles and cases, or to hold the goods subject to defendant's order. This demand was refused whereupon this suit was brought. The answer was a general denial and a counterclaim for the balance, or $1992.44, unpaid on the purchase price of the 3000 cases that were delivered. There was a trial before a jury which resulted in a verdict of $2800.55, which was reduced by the court by the sum of $170.15, on account of a matter hereinafter mentioned, and judgment entered for plaintiff for the balance.

It is urged by the defendant that the court erred in permitting witnesses to testify tha Lehrritter warranted the beverage not to cloud for at least a year. In this connection it is claimed that the correspondence that passed between the parties constituted a complete written contract and that the same could not be altered or varied by parol evidence of an additional warranty to those contained in the writing. This point would be well taken were it not for the fact that the letters upon their face show that they did not contain a complete agreement and did not purport to be a complete expression of the entire contract. In such circumstances the part reduced to writing may be enlarged by parol evidence. [Koons v. St. Louis Car Co., 203 Mo. 227, 255; Mosby v. Smith, 194 Mo. App. 20.] We think that the letters did not purport to cover the entire agreement for the reason that defendant's letter of February 26, 1917, told plaintiff that it was going to send Mr. Lehrritter to see him in regard to the sale of the beverage and stated that "We hope that when our Mr. Lehrritter sees you that you will conclude to become our wholesale distributor for your section of the country." It is apparent that Lehrritter was sent to make an agreement with plaintiff covering the sale of the beverage. Defendant's letter of March 6, 1917, does not show that defendant intended

therein to deal with all the matters that Lehrritter dis-
cussed with plaintiff but only the *propositions made by
plaintiff* to the defendant regarding the price to be
charged for the beverage and the terms of payment.
From all the circumstances it is apparent that the con-
tract was intended to consist of the letters and the
statements made by Lehrritter to plaintiff to induce
plaintiff to purchase the beverage.

It is insisted that plaintiff was not in a position to
declare a rescission of the contract for the reason that
he could not place defendant in a *statu quo* as plaintiff
kept the beverage for a long time and permitted it to
deteriorate and had disposed of some of it, together with
a small number of bottles and cases that had not been
returned to plaintiff by customers and that plaintiff
could not return to defendant. We think there is noth-
ing in this contention. Plaintiff did not permit the
beverage to deteriorate. It was warranted not to cloud
for the space of a year. Plaintiff kept the beverage for
a much less length of time when he discovered that the
same had become clouded and unmerchantable. When
plaintiff discovered this condition he immediately res-
cinded the sale and did all he could to place defendant
in *status quo;* he offered to return the beverage, bottles
and cases at the place they were delivered to him by
the defendant. He had already overpaid the amount
of the beverage that had been actually sold. He de-
manded back the price of the spoiled beverage that
he had paid for, together with the overpayments made
by him. This offer was refused by the defendant. The
fact that plaintiff was not able to return the beverage
sold and a few bottles and cases that he was not able to
get hold of, was not the fault of plaintiff. Plaintiff had
sold the goods that he was unable to return in the regu-
lar course of business and had tendered the proceeds of
the sale, together with the balance of the stock. This
was all he was required to do under the circumstances
to put defendant in *statu quo.* [24 R. C. L. p. 359;
Green v. Life Ins. Co., 159 Mo. App. 278, 298; Maupin

v. Mo. State Life Ins. Co., 214 S. W. 398, 401; Paquin v. Millikin, 163 Mo. 79; 13 C. J. pp. 621, 622.]

It is insisted that the court erred in assuming in plaintiff's instructions that Lehrritter was authorized to make the warranty that the beverage would not cloud within the space of one year. It is claimed that the warranty made was extraordinary and unusual for the reason that it was a warranty of the future condition of goods that were perishable in their nature. It is admitted that the beverage was a perishable product. We think that the warranty was not an unusual or extraordinary warranty. It was not a warranty as to future condition of the goods but against a present defect caused by improper or negligent manufacture. [Wendell v. Ozark Orchard Co., 200 S. W. 747.] Plaintiff had testimony to the effect that such a beverage ought to keep as much as three or four years. After plaintiff discovered that the beverage had spoiled he had it examined by a chemist in the Missouri State Beer Inspection Department and found that it had become turbid or clouded by reason of the presence of excessive starch; that the excessive starch was present because the beverage had not been properly clarified or filtered. There was evidence that beers and near-beers might not keep as long as a year but in view of the superior qualities claimed and price asked for "Ambrosia" we think that under the circumstances the warranty made by Lehrritter was nothing more than an ordinary warranty and such that he had authority as a matter of law to make. Lehrritter was not an ordinary soliciting agent but was sent by the defendant to see plaintiff after negotiations were on for the sale of the beverage, for the purpose of persuading plaintiff to enter into the contract. For defendant wrote plaintiff "We hope when our Mr. Lehrritter sees you that you will conclude to become our wholesale distributor for your section of the country." Plaintiff was entirely ignorant of defendant's beverage, it was manufactured by a secret process. One of defendant's officers stated that Lehrritter was authorized to represent the

qualities of the beverage in comparison with others of similar brews for the purpose of getting business. The president of the company testified that Lehrritter in soliciting the business was to present the product to the customer so that the latter might know what is was, but denied that Lehrritter had any authority to make any misstatements in reference to the product. We think under the circumstances that there is no question but that Lehrritter was sent for the purpose of representing the quality of the beverage and to make the usual warranties in regard to the same for the purpose of getting plaintiff's business, and that there was no error in assuming such a fact in the instructions. [1 Meachem on Agency (2d Ed.), secs. 880, 881, 882, 890; Palmer v. Hatch, 46 Mo. 585.]

The court refused to submit defendant's counterclaim to the jury and this is assigned as error. Apparently the court refused to submit the counterclaim on the theory that when plaintiff rescinded the contract and tendered back the remaining goods to defendant and treated the same as defendant's and not as his own, the goods were defendant's and that plaintiff could not be required to account for the same by way of a counterclaim. Whether the court was right or not, we think there was no error in connection with the incident, for the reason that after the return of the verdict and before entry of judgment the court had plaintiff send back the cases and bottles on hand (the contents being worthless), which amounted to $2529.85, and which under the terms of the contract defendant was bound to receive back at that sum. The contract value of the 3000 cases was $2700, and as plaintiff was not able to return all the bottles and cases, the court deducted from the verdict the sum of $170.15, representing the value of the bottles and cases not returned, and judgment for the balance was rendered. There was no dispute about the terms of the contract covering this feature, the state of the account between the parties, or the value of the bottles and cases. Under the circumstances it will be seen that defendant

203 M. A.—41

has gotten all that it was entitled to and we do not think that defendant can make this incident the basis of claim of reversible error. [Section 2082, R. S. 1909.]

The judgment is affirmed. All concur.