# OCTOBER, 1929.

G. W. WELKER, RESPONDENT, v. BEN HAYES, JR., APPELLANT.

Kansas City Court of Appeals. November 11, 1929.

*Lamb & Lamb* for respondent.

*Hulen & Walden* and *Roy McKittrick* for appellant.

BLAND, J.—This is an action in two counts, each upon a promissory note. The court sustained defendant's demurrer to the evidence as to count number two and plaintiff has not appealed so we need not consider further the note covered by this count. Count number one is upon a promissory note in the sum of $425, dated Salisbury, Mo., October 25, 1923, payable upon demand to The Peoples Bank of Salisbury, as payee, bearing seven per cent interest per annum and signed by the defendant, Ben Hayes, Jr. This note contains the following endorsement thereon—

"By order and consent of the Board of Directors, for value received, we assign the within note without recourse on us to G. W. Walker or order. (Signed) The Peoples Bank of Salisbury, by J. W. Grizzell, Pres."

The case was tried before the court without the aid of a jury, resulting in a judgment in favor of plaintiff in the sum of $552 and defendant has appealed.

The facts show that defendant executed a note in the sum of $425 to The Peoples Bank of Salisbury (hereinafter called the bank) on which he received the money from the bank; the note was thereafter sold and transferred to one Friend, but was not endorsed by the bank and was held by it through its president, Mr. Grizzell. The note was renewed on October 25, 1923, while it was still the property of Friend, the renewal note being the one sued upon by plaintiff. When Friend acquired the original note, he paid the bank for it by the bank's taking over another note held by Friend. On February 27, 1923, plaintiff deposited the sum of $10,500 in the bank, which went into an account in plaintiff's name at the bank designated "bond special account." The money in this account was left in the bank by plaintiff with which to buy bonds. Later plaintiff

consented that the bank use the money for other purposes and the bank, through its president, Grizzell, on November 12, 1923, purchased for plaintiff five notes from Friend, aggregating the sum of $2500, of which the note in suit was one, for which Grizzell paid Friend the sum of $2500 out of plaintiff's bond special account. Grizzell then placed the notes procured from Friend in an envelope and put the same in a pigeon hole in the vault of the bank as the property of plaintiff. Plaintiff testified that he knew of the transaction and the placing of the notes in the envelope for him a short time afterwards. From the foregoing facts it appears that the bank, through Grizzell, was acting as plaintiff's agent in the purchase of the note from Friend.

Up to this time the bank had not at any time endorsed the note in suit and no endorsement was made on behalf of the bank until a short time after February 10, 1927. It appears that the board of directors of the bank on the last-named date directed that Grizzell, the president of the bank, assign to plaintiff the note in suit. Defendant attacks the regularity of the documents by which plaintiff at the trial showed this proceeding but in view of the conclusion at which we have arrived in reference to other issues in the case, it is not necessary for us to state the testimony in reference to defendant's contention in this regard.

It is insisted that the trial court should have sustained defendant's demurrer to the evidence because there was no competent legal evidence that plaintiff was vested with title to the note. In this connection it is insisted that under the statute, section 11762 Revised Statutes 1919, Grizzell, the president of the bank, "had no power or right to sell the note (in suit) without first a written record having been made by the board of directors authorizing him to endorse the note" and that the board of directors on February 10, 1927, had no power or right to authorize the endorsement of the note "and thereby ratify or authorize the delivery of the note to plaintiff in November, 1923."

It is not necessary to pass upon the question as to the right of the board of directors to ratify said act of its president for the reason that no authority of the board of directors was necessary in order to empower Grizzell to sell the note, if he did, in the first instance to Friend and to have endorsed the note in the name of the bank without recourse to plaintiff. [Stover Bank v. Welpman, decided by the Supreme Court but not yet reported.] In any event, the bank, through Grizzell, was merely transferring title from Friend to plaintiff in the capacity of agent.

In the case of Stover Bank v. Welpman, 284 S. W. 177, this court held in effect that the amendment to the statute striking out the words "sell" and "selling" did not change it and that even now it is unlawful for an officer of a bank to sell notes, bonds and other

obligations received by it for money loaned. It was recognized in that case that we were holding contrary to the decision of the St. Louis Court of Appeals in the case of Taylor v. Fugua, 203 Mo. App. 581, so the Stover Bank case was certified to the Supreme Court which disagreed with this court and the case of Stover v. Welpman, 284 S. W. 177, is overruled.

It is, therefore, our holding in this case that title to the note in suit was conveyed to Friend by the bank and by the latter, through Grizzell, as agent without the statutory authorization by the directors and in so holding we assume that the board of directors of the bank had no power to ratify the act of Grizzell either in selling the note to Friend or to plaintiff, if such ratification had been necessary, and that the action taken by them on February 10, 1927, was of no avail.

It is claimed that the record conclusively shows that the note in suit and the four other notes which we have mentioned, were placed and hypothecated by the bank to plaintiff as collateral security for the $10,500 which it is claimed was lent by plaintiff to the bank on February 27, 1923, and that the transaction had between plaintiff and Grizzell on November 12, 1923, did not constitute a sale of the note. There is much in the record tending to support this contention of the defendant but we do not think that it is *conclusively* shown that this was the nature of the transaction had between plaintiff and the bank. However, assuming that plaintiff holds the note merely as collateral security, he is still entitled to bring suit upon it. [Farmers' State Bank v. Miller, 300 S. W. 834.]

It is claimed that the petition fails to state a cause of action. No attack was made upon the petition before trial and it must be given a liberal construction. [State ex inf. v. Arkansas Lumber Co., 260 Mo. 212, 282, 283; Block v. Fidelity & Guaranty Co., 290 S. W. 429, 441; State ex rel. v. Gromer, 252 S. W. 705, 707.] The petition alleges, after describing the note that plaintiff is the *"owner and holder* of the note described as aforesaid, a verified copy of which note is hereto attached and marked plaintiff's Exhibit A.'' (Italics ours.) The note with the endorsement thereon was filed as an exhibit with the petition. The answer joins issue with plaintiff upon the allegation that he was the owner and holder of the note by alleging that defendant ''denies that plaintiff is or ever was the legal owner and holder of the note described in plaintiff's petition; denies that plaintiff has any right, title or interest in and to said note.'' Defendant claims that the note is payable to another than plaintiff and that consequently the latter must rely upon title by endorsement and that it has been repeatedly held in this State that it is necessary to allege in the petition the endorsement in order for the petition to state a good cause of action. There are cases in this State so holding, which were decided prior to the enactment in this

State of the uniform Negotiable Instruments Act. [See Mechanic's Bank v. Donnell, 35 Mo. 373; Dyer v. Krayer, 37 Mo. 603; Milling Co. v. Packwood, 154 Mo. App. 204, 207.] This rule is recognized as a general rule by Corpus Juris (see 8 C. J. 886, 890). But that work also lays down the law as follows:

"*Under the Negotiable Instruments Law,* it has been held sufficient to allege that plaintiff is the owner and in possession of the instrument, although it is not payable to plaintiff and there is no allegation that it has been assigned or indorsed to him." [8 C. J. 890 ] [See also Callahan v. Dry Goods Co., 131 S. W. 995, 140 Ky. 712; Sullivan v. Gaul, 200 N. W. 12, 15; Berghoff v. Cummings, 225 Ill. App. 1.] We think that the petition states a good cause of action under the Negotiable Instruments Law even assuming that plaintiff is relying upon an indorsement. However, plaintiff was not required to rely upon the indorsement in order to recover. Section 835, Revised Statutes 1919, provides:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to enforce the instrument against one who signed for the accommodation of his transferor, and the right to have the indorsement of the transferor if omitted by accident or mistake. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

Section 837 provides:

"The holder of a negotiable instrument may sue thereon in his own name; and payment to him in due course discharges the instrument."

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.