## UNION INDEMNITY CO. v. HOME TRUST CO.

### No. 9608.

Circuit Court of Appeals, Eighth Circuit.
April 13, 1933.

C. V. Garnett, of Kansas City, Mo. (Paul Barnett and Watson, Ess, Groner, Barnett & Whittaker, all of Kansas City, Mo., on the brief), for appellant.

Harry L. Jacobs, of Kansas City, Mo. (I. J. Ringolsky, William G. Boatright, and Ringolsky, Boatright & Jacobs, all of Kansas City, Mo., on the brief), for appellee.

. Before KENYON, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment entered upon the verdict of a jury in an action at law brought by the appellee against the appellant upon a fidelity bond. The parties will be referred to as in the court below.

In 1923 C. R. Burrell became a vice president and director of the plaintiff, Home Trust Company. He was in charge of the plaintiff's transactions with some forty correspondent banks in the Kansas City territory. Through Burrell the plaintiff sold promissory notes to these banks. In 1925 Burrell was interested in the Thomas Southard Company of St. Joseph, Mo. In order to finance this company, he, without authority from the plaintiff, loaned the plaintiff's money upon the Southard Company's notes, which he sold to the plaintiff's correspondent banks. In 1927 the Southard Company became utterly insolvent. In order to conceal his misconduct, Burrell substituted other notes for those of the Southard Company as they matured and were returned by the correspondent banks to the plaintiff for collection. These substitute notes, or at least such of them as we are here concerned with, were forgeries. These forged notes were indorsed in the name of the plaintiff without recourse by Burrell as its vice president. On April 10, 1931, when Burrell's wrongdoing was discovered, the plaintiff redeemed this forged paper.

The plaintiff also took up, upon demand of its correspondent, Tonganoxie State Bank, three notes which had been sold to it by Burrell. These notes are known as the Cooper, the Swearingen, and the Bramwell notes.

The Cooper note was for $5,000, was dated October 1, 1930, due April 1, 1931, payable to the order of the plaintiff, signed by Cooper, and indorsed, "Without recourse, Home Trust Company by C. R. Burrell, V. P." The Tonganoxie Bank had received the note from Burrell accompanied by a statement of Cooper's financial condition. Cooper had signed the note for the accommodation of Burrell, although he did not know that it was payable to the plaintiff. At the time of trial, Cooper was indebted to the plaintiff for $17,000, which was past due and which it was unable to collect. The Cooper note never belonged to the plaintiff and was never shown upon its books.

The Swearingen note was for $3,080, dated March 11, 1931, due September 11, 1931, and was payable to the plaintiff. It was indorsed in the same way as the Cooper note and sold to the Tonganoxie Bank by Burrell. It had not belonged to the plaintiff and was not shown upon its records. At the time of trial, Swearingen owed the plaintiff $150, which was said by its president to be uncollectible.

The Bramwell note was for $4,850, dated January 19, 1931, due April 19, 1931, payable to the plaintiff, and was indorsed and sold, in the same way as the Cooper and Swearingen notes, to the Tonganoxie Bank. Bramwell in 1927 had been indebted to the plaintiff in the sum of $11,000. This indebtedness was criticized by the examiners; it was removed from the assets of the plaintiff by its officers, and has never been collected. Bramwell testified that he signed the note to cover indebtedness to Burrell and that he did not notice that it was payable to the plaintiff. The note never belonged to the plaintiff and never appeared upon its records.

Burrell's irregularities were discovered about April 10, 1931. A fidelity bond given by the defendant indemnity company insured the plaintiff against direct loss, in an amount not exceeding $50,000, sustained through any dishonest acts of its officers, clerks, or other persons in its immediate employ. The defendant was given immediate oral notice of Burrell's defalcations, which was followed, on April 15, 1931, by written proof of loss. Two adjusters of the defendant called shortly thereafter. The defendant's auditor called some two months later. The plaintiff turned over its books to him and gave to him all available information. On June 5, 1931, the defendant informed the plaintiff that in its opinion the losses were not covered by the bond. The plaintiff brought suit on September 18, 1931.

The complaint contained eleven counts. The first eight alleged losses from the redemption of the forged paper sold to the correspondent banks by Burrell. The last three counts alleged losses from the redemption of the Cooper, Swearingen, and Bramwell notes. The plaintiff asked for judgment for each of the alleged losses and for damages and attorney's fees for vexatious refusal to pay, under R. S. Missouri 1929, § 5929 (Mo. St. Ann. § 5929). Upon the trial the defendant admitted liability under the first eight counts of the complaint, namely, those relating to the sale and redemption of the forged paper. It contested its liability, under the last three counts. The verdict of the jury was for the plaintiff on each count, and there was added to the verdict on each count one dollar for vexatious refusal, and attorney's fees of approximately 10 per cent. of the principal sum.

Since liability was admitted as to the first eight counts, the defendant complains of the verdict, so far as it relates to those counts, only with respect to the amounts added for vexatious refusal and attorney's fees.

As to the last three counts, the defendant contends:

1. That Burrell had no authority to bind the plaintiff with respect to the sale of the notes.

2. That the plaintiff was under no legal obligation to redeem the notes.

3. That the evidence was insufficient to justify a finding of vexatious refusal.

4. That error was committed by the court in its instructions in defining "dishonest acts." This contention we regard as without merit, and we shall not discuss it.

■ Burrell had authority to bind the plaintiff with respect to the sale of the Cooper, Swearingen, and Bramwell notes. The plaintiff was a trust company organized under the laws of Missouri. Section 5451, R. S. Missouri 1929 (Mo. St. Ann. § 5451), prohibits an officer of a trust company, without authority of its board of directors, from pledging or hypothecating any notes, bonds, or other obligations received by the company for money loaned. There is no prohibition against sale by an officer of notes for money loaned or for money not loaned. The contention that section 5451 relating to trust companies should be construed to be coextensive with section 5380 of the same statutes (Mo. St. Ann. § 5380), which prohibits an officer of a bank, without authority of its board, from indorsing notes received for money loaned, we think is unsound. But, even if we were wrong as to this, it appears that section 5380 does not prohibit the sale of a note by an officer under an endorsement without recourse. Stover Bank v. Welpman, 323 Mo. 234, 19 S.W.(2d) 740, where it was held that the inhibition against "indorsing" was not intended to extend to an indorsement, such as one without recourse, which is evidence of a mere sale. See, also, Moseley v. Smith, 223 Mo. App. 1189, 21 S.W.(2d) 637; Welker v. Hayes, 224 Mo. App. 392, 22 S.W.(2d) 1052; Tate v. Farmers' Exchange Bank of Chula (Mo. App.) 37 S.W.(2d) 992.

■ The general rule is, of course, that a corporation is bound by the acts of its proper officers performed in the regular course of its business and within the scope of their apparent authority. Merchants' Nat. Bank v. State Nat. Bank, 10 Wall. 604, 644, 19 L. Ed. 1008; Martin v. Webb, 110 U. S. 7, 14, 3 S. Ct. 428, 28 L. Ed. 49; Sun Printing & Pub. Ass'n v. Moore, 183 U. S. 642, 650, 22 S. Ct. 240, 46 L. Ed. 366; Jenson v. Toltec Ranch Co. (C. C. A. 8) 174 F. 86, 89; Badders Clothing Co. v. Burnham-Munger-Root Dry Goods Co. (C. C. A. 8) 228 F. 470, 474 (certiorari denied 241 U. S. 678, 36 S. Ct. 727;

60 L. Ed. 1233); Manchester Mill & Elev. Co. v. Strong (C. C. A. 8) 231 F. 876, 881; Ratcliff v. Clendenin (C. C. A. 8) 232 F. 61, 67; El Dorado Refining Co. v. Lientz (C. C. A. 8) 7 F.(2d) 814, 817; Bijur Motor Lighting Co. v. Eclipse Mach. Co. (C. C. A. 2) 243 F. 600, 604; Charles Roesch & Sons Co. v. Mumford (C. C. A. 3) 230 F. 56, 60; In re Lance Lumber Co. (D. C.) 224 F. 598, 601; Id. (C. C. A. 3) 237 F. 357; American Nat. Bank of Sapulpa, Okla. v. Bartlett (C. C. A. 10) 40 F.(2d) 21, 24.

Our conclusion upon this point disposes of all objections to the admissibility of evidence of the extent to which Burrell did bind the plaintiff.

■ The plaintiff was obligated to redeem these notes upon the demand of the Tonganoxie Bank. The cashier of that bank gave the following testimony with respect to the purchase of these notes: "It was understood through conversations between Mr. Burrell and myself that paper which Tonganoxie State Bank purchased from the Home Trust Company in this manner was to be good, collectible bankable paper, executed by responsible parties for valuable consideration and representing loans made by the Home Trust Company to the makers of the same in the regular course of business, and in ordering and acquiring this paper from the Home Trust Company, Tonganoxie State Bank at all times relied on this understanding and in accepting and paying for all paper it purchased from the Home Trust Company, including all notes mentioned and described in detail in this affidavit, the Tonganoxie State Bank believed that all the notes purchased by it, detailed herein, were of the kind represented and all of the notes and commercial paper acquired by Tonganoxie State Bank in its dealings with Home Trust Company were to be of the class of paper above mentioned and it was understood and agreed between Mr. Burrell and myself that this paper was to be the kind of paper delivered to the Tonganoxie State Bank when it called for same." This testimony was uncontradicted.

Obviously, the notes foisted upon the Tonganoxie State Bank by Burrell were not such notes as were ordered by that bank. They were not bankable notes executed by responsible parties and taken by the plaintiff in the regular course of business, but were notes taken by Burrell in the course of his fraudulent and dishonest dealings.

■ By the great weight of authority in this country at the present time, if a buyer does not receive the goods he bargained for, he

may rescind the sale and recover what he has paid. This was the common law in Missouri at the time of these transactions. Tiffany v. Times Square Automobile Co., 168 Mo. App. 729, 154 S. W. 865; Simrall v. American Multigraph Sales Co., 172 Mo. App. 384, 158 S. W. 437; Bagnall v. Frank Fehr Brewing Co., 203 Mo. App. 635, 221 S. W. 793; Eastin v. Bank of Harrisonville, 213 Mo. App. 130, 246 S. W. 991; Bixler v. Wagster (Mo. App.) 256 S. W. 520; Girdner v. Alley (Mo. App.) 256 S. W. 832; Parish v. Casner (Mo. Sup.) 282 S. W. 392; Arnold v. Security Bank of St. Joseph, 221 Mo. App. 683, 285 S. W. 161; Jones v. Norman (Mo. App.) 24 S.W.(2d) 191; Conroys, Inc., v. Brooks (Mo. App.) 50 S.W.(2d) 708, 710. See, also, Utley v. Donaldson, 94 U. S. 29, 45, 24 L. Ed. 54; Norrington v. Wright, 115 U. S. 188, 203, 205, 6 S. Ct. 12, 29 L. Ed. 366; Pope v. Allis, 115 U. S. 363, 371, 372, 6 S. Ct. 69, 29 L. Ed. 393; Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 255, 261, 7 S. Ct. 882, 30 L. Ed. 920; Meyer v. Richards, 163 U. S. 385, 405, 16 S. Ct. 1148, 41 L. Ed. 199; Sloan v. Wolf Co. (C. C. A. 8) 124 F. 196, 199; Whalen v. Gordon (C. C. A. 8) 95 F. 305, 312.

The American Uniform Sales Act, § 69 (1) (d), which permits rescission where the goods sold do not correspond with their description appears to express the common-law rule as established by the weight of American authority.

There are, however, cases holding that, when a contract for the purchase of goods is executed and no fraud is involved, the buyer is left to his action for damages for breach of warranty. Worcester Mfg. Co. v. Waterbury Brass Co., 73 Conn. 554, 48 A. 422; La Grange v. Coyle, 50 Ind. App. 140, 98 N. E. 75; Wirth v. Fawkes, 109 Minn. 254, 123 N. W. 661, 134 Am. St. Rep. 778. See 2 Williston on Sales (2d Ed. 1924) § 608a; 55 Corpus Juris, p. 269.

Even under this rule, the Tonganoxie Bank apparently would have been entitled to receive from the plaintiff, as damages, the face of these rather obviously worthless notes which had been transferred to it by Burrell.

The fact that the "goods" in question here were negotiable instruments does not prevent the application of the rule permitting rescission. See Meyer v. Richards, 163 U. S. 385, 16 S. Ct. 1148, 41 L. Ed. 199; Webb v. Odell, 49 N. Y. 583; Engen v. Merchants' & M. State Bank, 164 Minn. 293, 298, 204 N. W. 963, 43 A. L. R. 610; Eastin v. Bank of Harrisonville, 213 Mo. App. 130,

246 S. W. 991; Arnold v. Security Bank of St. Joseph, 221 Mo. App. 683, 285 S. W. 161; Benjamin on Sales (5th Eng. Ed. 1906) p. 622.

This conclusion makes it unnecessary for us to consider any liability of the plaintiff based upon the statutory warranties of R. S. Missouri 1929, § 2693 (Mo. St. Ann. § 2693), incident to a qualified endorsement of a negotiable instrument.

R. S. Missouri 1929, § 5929 (Mo. St. Ann. § 5929), provides: "In any action against any insurance company to recover the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

As was said by this court in St. Paul Fire & Marine Ins. Co. v. Eldracher, 33 F. (2d) 675, 683 (certiorari denied 280 U. S. 604, 50 S. Ct. 86, 74 L. Ed. 649): "The supreme court of Missouri has held that the phrase 'vexatious refusal to pay' means without reasonable or probable cause or excuse; that vexatious refusal is not to be deduced from the mere fact that upon trial the verdict is adverse to the defendant; that defendant is allowed to entertain an honest difference of opinion as to its liability or the extent thereof and to litigate that difference, otherwise the statute would be void; that it is not liable for the penalty and attorney's fee if it acts in good faith in contesting either an issue of fact or an issue of law; that the evidence and circumstances must show that such refusal was willful and without reasonable cause as the facts appeared to a reasonably prudent man before the trial; and that a defendant must be allowed to entertain an honest difference of opinion as to its liability and litigate the matter to establish, if it can, its contention. Block v. Guaranty Co., 316 Mo. 278, 290 S. W. 429; Non-Royalty Shoe Co. v. Phœnix Assur. Co., 277 Mo. 399, 210 S. W. 37; Aufrichtig v. Life Ins. Co., 298 Mo. 1, 249 S. W. 912; Kusnetzky v. Ins. Co., 313 Mo. 143, 281 S. W. 47, 45 A. L. R. 189. And see Commercial Casualty Ins. Co. v. Fruin-Colnon Contracting Co. (C. C. A.) 32 F.(2d) 425."

■ It is suggested by the defendant here that if it was justified in refusing to pay any of the losses referred to in the complaint, no penalty or attorney's fee for vexatious refusal could lawfully be imposed. We do not agree with that contention. Each loss sustained by the plaintiff through a dishonest act of Burrell created a separate liability and constituted a separate cause of action under the bond. It is true that in Hickory County v. Fugate, 143 Mo. 71, 44 S. W. 789, the court held that a petition stated a single cause of action on a bond, though it assigned several distinct breaches of a condition thereof. That case dealt with a penal bond, while the bond in this case is virtually a policy of insurance.

In any event, the following cases indicate that the complaint in this action states not one but several causes of action: Exchange Bank of Novinger v. Turner, 321 Mo. 1104, 14 S.W.(2d) 425; Block v. U. S. Fid. & Guar. Co. of Baltimore, Md., 316 Mo. 278, 290 S. W. 429; State ex rel. v. Fid. & Dep. Co. of Maryland (Mo. App.) 228 S. W. 865; State ex rel. Patterson v. Tittmann, 134 Mo. 162, 35 S. W. 579; Salyers v. United States for Use of Indiana Quarries Co. (C. C. A. 8) 257 F. 255; Tabor v. Universal Exploration Co. (C. C. A. 8) 48 F.(2d) 1047.

The defendant's position is that the evidence did not justify the submission of the question of vexatious refusal to the jury; that the evidence necessary to establish the losses of the plaintiff was of a complicated character; that, even when the suit was filed, the nature of many of the transactions involved was still obscure; that there was a serious question whether the original Southard loans were bona fide transactions; and that the evidence is at least as consistent with the hypothesis that there was no vexatious refusal as with the hypothesis that there was, and therefore tended to prove neither hypothesis. On the other hand, the plaintiff contends that the defendant's auditor had before him all of the evidence which was later and after the commencement of the suit presented to the auditor appointed by the court; that the defendant had available to it all of the information with reference to the Southard loans, and that, in denying liability, the defendant itself stated that it reached its conclusion of nonliability after a careful analysis; that, under the circumstances, the defendant's claim that there was no evidence of a vexatious refusal is not justified.

■ We think that great caution should be exercised in submitting to a jury in such a case as this the question of vexatious refusal. If there exists an honest and justifiable controversy as to the facts or an honest and justifiable controversy as to the law, an insurer should not be penalized for refusing to pay a loss for which it, in good faith and upon reasonable grounds, believes itself not liable. Commercial Casualty Ins. Co. v. Fruin-Colnon Contracting Co. (C. C. A. 8) 32 F.(2d) 425, 428; St. Paul F. & M. Ins. Co. v. Eldracher (C. C. A. 8) 33 F.(2d) 675, 683 (certiorari denied 280 U. S. 604, 50 S. Ct. 86, 74 L. Ed. 649); Standard Acc. Ins. Co. v. Rossi (C. C. A. 8) 35 F.(2d) 667, 673; Inter-Southern Life Ins. Co. v. McElroy (C. C. A. 8) 38 F.(2d) 557, 561; Buffalo Ins. Co. of City of Buffalo, N. Y., v. Bommarito (C. C. A. 8) 42 F.(2d) 53, 57, 70 A. L. R. 1211. If, however, the evidence is such that reasonable minds might differ as to whether the denial of liability or refusal to pay on the part of the insurer was honest and justifiable, the plaintiff would be entitled to have the question of vexatious refusal submitted to the jury.

■ In this case our conclusion is that there could have been a reasonable difference of opinion as to whether the refusal of the defendant to pay the losses set forth in the first eight counts of the complaint was justified at the time of the commencement of the action, since the defendant had available to it virtually all of the information which ultimately led to its admission of liability, and, upon the basis of that information and without asserting any insufficiency with respect to its knowledge of the transaction which resulted in the losses, denied any liability. See Massachusetts B. & Ins. Co. v. R. E. Parsons Elect. Co. (C. C. A. 8) 61 F.(2d) 264, 272. We are therefore not disposed to disturb the verdict with respect to those counts.

With respect to the last three counts, however, we think the evidence is not sufficient to sustain a finding that the refusal of the defendant was so entirely without justification or merit as to constitute a vexatious refusal to pay these losses.

We therefore reach the conclusion that the penalties and attorney's fees amounting to $1,296, for vexatious refusal to pay the losses referred to in the last three counts, should not have been included in the verdict and the judgment entered thereon.

The judgment will be reversed and a new trial granted unless, within thirty days from the filing of this opinion, the appellee shall file in the office of the clerk of the United States District Court for the Western District

of Missouri, a remittitur of such penalties and attorney's fees, and shall, within ten days thereafter, file with the clerk of this court a certified copy thereof. If such remittitur and certified copy thereof be filed, the judgment, less the amount so remitted, will stand affirmed. No costs shall be taxed on this appeal for or against either of the parties.